[No. D057852. Fourth Dist., Div. One. Aug. 12, 2011.]

ELAINE CARTER, Individually and as Personal Representative, etc., et al., Plaintiffs and Appellants, v.
PRIME HEALTHCARE PARADISE VALLEY LLC, Defendant and Respondent.

**COUNSEL**

Law Office of Jorge I. Hernandez and Jorge I. Hernandez for Plaintiffs and Appellants.

Carroll, Kelly, Trotter, Franzen & McKenna, Michael J. Trotter, Brenda Ligorsky and David P. Pruett for Defendant and Respondent.

**OPINION**

**IRION, J.**—Plaintiffs Elaine Carter,[1] Newgene Grant and Roosevelt Grant, Jr., appeal a judgment entered after the trial court sustained a demurrer without leave to amend. Plaintiffs sued defendant Prime Healthcare Paradise Valley

---

[1] Carter sues in her individual capacity and as the personal representative of her deceased father.

LLC, doing business as Paradise Valley Hospital (the Hospital) and Paradise Valley Health Care Center, Inc. (the Center),[2] for the death of their father, Roosevelt Grant (Grant), on theories of elder abuse, willful misconduct and wrongful death. On the Hospital's demurrer, the trial court ruled that plaintiffs had not alleged conduct that qualified as elder abuse (as distinguished from negligence) and that the willful misconduct and wrongful death claims were untimely. We affirm.

I

## STATEMENT OF THE CASE

### A. *Background Facts*

Because this case comes to us after entry of a judgment based on the sustaining of a demurrer, we accept as true the material allegations of plaintiffs' pleadings. (*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 7 [276 Cal.Rptr. 303, 801 P.2d 1054].) According to plaintiffs' first amended complaint, the following events led to the death of Grant:

Approximately two months after undergoing hip surgery, Grant was admitted to the Hospital for chest pain on April 21, 2008. Grant was 87 years old and had no pressure ulcers at that time.

Two days later, Grant was transferred to the Center, a skilled nursing facility, for short-term rehabilitation therapy. He was generally in good health at the time. The Center advised plaintiffs that Grant would likely remain there for approximately 100 days.

While at the Center, Grant was "continually neglected." For example, when Grant was bathed in bed, "he was routinely not dried[;] instead he was placed in front of an open window with a fan blowing on him to 'air-dry' . . . even during cold days." This practice of leaving Grant wet and cold for extended periods of time continued despite protests by Grant's daughter and ultimately caused Grant to develop pneumonia. Additionally, when Grant was showered in a wheelchair, he was often left in unfamiliar surroundings, alone, wet and helpless. The Center also did not provide Grant sufficient nutrition or hydration. Due to this neglect, Grant weakened and developed pneumonia, pressure ulcers on his lower back and buttocks, and sepsis.

On May 6, 2008, Grant was admitted to the Hospital for eight days for treatment of the pneumonia, sepsis and pressure ulcers. While at the Hospital,

---

[2] The Center is not a party to this appeal.

he developed additional pressure ulcers on his heels. The records regarding these pressure ulcers "were fraudulently and falsely maintained."

After discharge from the Hospital, Grant returned to the Center for approximately three months. At the Center, Grant continued to be mistreated; for example, he was isolated, not repositioned and improperly bathed.

On August 18, 2008, Grant was admitted to the Hospital for a third and final time. The Hospital did not give Grant lifesaving medications, including antibiotics, despite records stating the contrary.[3] The Hospital also failed properly to stock a "crash cart" for use in emergency situations, again despite records stating the contrary. As a result of the Hospital's "abuse, neglect and fraud," Grant died when those treating him could not locate a common-size endotracheal tube and intubate him in time to save his life.

## B. Trial Court Proceedings

Plaintiffs initiated this action against the Hospital and the Center on October 27, 2009. In their first amended complaint, plaintiffs alleged three separately labeled causes of action against the Hospital: (1) violations of the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.) (the Elder Abuse Act or the Act); (2) willful misconduct; and (3) wrongful death.[4] The gist of these claims was that the Hospital caused Grant's death by "recklessly," "willfully," and "with deliberate indifference and conscious disregard for the health, safety and well-being of [Grant]," failing to treat his pressure ulcers, administer his prescribed medications and properly stock a crash cart. Plaintiffs sought compensatory and punitive damages as well as costs, including attorney fees.

The Hospital demurred to the first amended complaint on the grounds that the elder abuse claim did not state facts sufficient to constitute a cause of action and the willful misconduct and wrongful death claims were time-barred. Over plaintiffs' opposition, the trial court sustained the demurrers without leave to amend. The court ruled (1) the allegations of the elder abuse claim did not constitute "neglect" within the meaning of the Elder Abuse Act; (2) there is no separate cause of action for willful misconduct; and (3) the

---

[3] Grant's daughter suspected her father was not receiving proper medications and immediately after his death requested that his blood be tested to determine whether it contained the prescribed medications. According to plaintiffs, the Hospital "tested for other drugs, not the prescription drugs in question. This was plainly done as a cover-up to hide the most basic [breach] of [the Hospital's] duty to administer [Grant's] required medication to fight his pneumonia."

[4] Plaintiffs alleged these same causes of action as well as two others against the Center. Because the Center is not a party to this appeal, we do not determine the sufficiency of any claims as they pertain to the Center.

willful misconduct and wrongful death claims arose from the Hospital's provision of professional services and were barred by the statute of limitations. The court entered a judgment in favor of the Hospital and against plaintiffs. Plaintiffs filed a notice of appeal after the court heard the Hospital's demurrer but before it entered judgment.[5]

## II

## DISCUSSION

### A. Standard of Review

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment." (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967 [9 Cal.Rptr.2d 92, 831 P.2d 317].)

### B. The Trial Court Properly Sustained the Hospital's Demurrer to the Elder Abuse Cause of Action Without Leave to Amend

Plaintiffs contend the trial court erred in sustaining without leave to amend the Hospital's demurrer to the first cause of action based on "neglect" of Grant in violation of the Elder Abuse Act.[6] According to plaintiffs, they properly alleged a claim under the Act based on the Hospital's fraudulent or

---

[5] Because the trial court announced its intention to sustain the demurrer without leave to amend at the hearing, we exercise our discretion to treat the notice of appeal as having been filed immediately after entry of judgment. (Cal. Rules of Court, rule 8.104(d)(2).)

[6] There is a split of authority on whether the Elder Abuse Act creates an independent cause of action or merely provides additional remedies for some other cause of action. (Compare *Perlin v. Fountain View Management, Inc.* (2008) 163 Cal.App.4th 657, 666 [77 Cal.Rptr.3d 743] (*Perlin*) ["the Act creates an independent cause of action"] with *Berkley v. Dowds* (2007) 152 Cal.App.4th 518, 529 [61 Cal.Rptr.3d 304] (*Berkley*) ["The Act does not create a cause of action as such, but provides for attorney fees, costs, and punitive damages under certain conditions."]; see also *Smith v. Ben Bennett, Inc.* (2005) 133 Cal.App.4th 1507, 1525 [35 Cal.Rptr.3d 612] (*Smith*) ["An elder abuse claim could be a 'cause of action' for some statutory purposes but not others."].) "We need not resolve this issue as, assuming arguendo that [the

reckless failure to provide medical care Grant needed. We shall set forth the legal principles governing elder abuse claims based on neglect in general and then apply those principles to this case.

### 1. *General Legal Principles Applicable to Elder Abuse Based on Neglect*

■ The Elder Abuse Act makes certain enhanced remedies available to a plaintiff who proves abuse of an elder, i.e., a "person residing in this state, 65 years of age or older." (Welf. & Inst. Code, § 15610.27.) In particular, a plaintiff who proves "by clear and convincing evidence" both that a defendant is liable for physical abuse, neglect or financial abuse (as these terms are defined in the Act) and that the defendant is guilty of "recklessness, oppression, fraud, or malice" in the commission of such abuse may recover attorney fees and costs. (Welf. & Inst. Code, § 15657, subd. (a).) On the same proof, a plaintiff who sues as the personal representative or successor in interest of a deceased elder is partially relieved of the limitation on damages imposed by Code of Civil Procedure section 377.34 and may recover damages for the decedent's predeath pain and suffering. (Welf. & Inst. Code, § 15657, subd. (b).)

■ The Elder Abuse Act defines abuse as "[p]hysical abuse, *neglect*, financial abuse, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering" (Welf. & Inst. Code, § 15610.07, subd. (a), italics added); or "[t]he deprivation by a care custodian of goods or services that are necessary to avoid physical harm or mental suffering" (*id.*, § 15610.07, subd. (b)). The Act defines neglect as "[t]he negligent failure of any person having the care or custody of an elder or a dependent adult to exercise that degree of care that a reasonable person in a like position would exercise." (Welf. & Inst. Code, § 15610.57, subd. (a)(1).) "Neglect includes, but is not limited to, all of the following: [¶] (1) Failure to assist in personal hygiene, or in the provision of food, clothing, or shelter. [¶] (2) Failure to provide medical care for physical and mental health needs. . . . [¶] (3) Failure to protect from health and safety hazards. [¶] (4) Failure to prevent malnutrition or dehydration." (*Id.*, § 15610.57, subd. (b).) In short, neglect as a form of abuse under the Elder Abuse Act refers "to the failure of those responsible for attending to the basic needs and comforts of elderly or dependent adults, regardless of their professional standing, to carry out their custodial obligations." (*Delaney v. Baker* (1999) 20 Cal.4th 23, 34 [82 Cal.Rptr.2d 610, 971 P.2d 986] (*Delaney*).) Thus, when the medical care of an elder is at issue, "the statutory definition of 'neglect' speaks not of the

Act] creates an independent cause of action, [plaintiffs'] allegations do not state a claim against [the Hospital] for . . . abuse of an elder." (*Das v. Bank of America, N.A.* (2010) 186 Cal.App.4th 727, 744 [112 Cal.Rptr.3d 439].)

*undertaking* of medical services, but of the failure to *provide* medical care." (*Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771, 783 [11 Cal.Rptr.3d 222, 86 P.3d 290] (*Covenant Care*); see also *id.* at p. 786 ["statutory elder abuse may include the egregious withholding of medical care for physical and mental health needs . . ."].)

■ To recover the enhanced remedies available under the Elder Abuse Act from a health care provider, a plaintiff must prove more than simple or even gross negligence in the provider's care or custody of the elder. (Welf. & Inst. Code, § 15657.2; *Delaney, supra*, 20 Cal.4th at p. 32; *Sababin v. Superior Court* (2006) 144 Cal.App.4th 81, 88 [50 Cal.Rptr.3d 266] (*Sababin*).) The plaintiff must prove "by clear and convincing evidence" that "the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of" the neglect. (Welf. & Inst. Code, § 15657.) Oppression, fraud and malice "involve 'intentional,' 'willful,' or 'conscious' wrongdoing of a 'despicable' or 'injurious' nature." (*Delaney*, at p. 31.) Recklessness involves " 'deliberate disregard' of the 'high degree of probability' that an injury will occur" and "rises to the level of a 'conscious choice of a course of action . . . with knowledge of the serious danger to others involved in it.' " (*Id.* at pp. 31–32.) Thus, the enhanced remedies are available only for " 'acts of egregious abuse' against elder and dependent adults." (*Id.* at p. 35; see also *Covenant Care, supra*, 32 Cal.4th at p. 786 ["statutory elder abuse may include the egregious withholding of medical care for physical and mental health needs . . ."].) In short, "[i]n order to obtain the Act's heightened remedies, a plaintiff must allege conduct essentially equivalent to conduct that would support recovery of punitive damages." (*Covenant Care*, at p. 789.)

Examples of cases involving conduct sufficiently egregious to warrant the award of enhanced remedies under the Elder Abuse Act include the following:

—A skilled nursing facility (1) failed to provide an elderly man suffering from Parkinson's disease with sufficient food and water and necessary medication; (2) left him unattended and unassisted for long periods of time; (3) left him in his own excrement so that ulcers exposing muscle and bone became infected; and (4) misrepresented and failed to inform his children of his true condition. (*Covenant Care, supra*, 32 Cal.4th at p. 778.)

—An 88-year-old woman with a broken ankle "was frequently left lying in her own urine and feces for extended periods of time" and she developed pressure ulcers on her ankles, feet and buttocks that exposed bone, "despite plaintiff's persistent complaints to nursing staff, administration, and finally, to a nursing home ombudsman." (*Delaney, supra*, 20 Cal.4th at pp. 27, 41.)

—A facility caring for a dependent adult with a known condition causing progressive dementia, requiring nutrition and hydration through a gastrostomy tube, and subjecting her to skin deterioration, ignored a medical care plan requiring the facility to check the dependent adult's skin on a daily basis and failed to notify a physician when pressure ulcers and other skin lesions developed. (*Sababin, supra,* 144 Cal.App.4th at pp. 83–87, 90.)

—A 78-year-old man admitted to a skilled nursing facility "was abused, beaten, unlawfully restrained, and denied medical treatment." (*Smith, supra,* 133 Cal.App.4th at p. 1512.)

—The staff of a nursing home (1) failed to assist a 90-year-old, blind and demented woman with eating; (2) used physical and chemical restraints to punish the elder and prevent her from obtaining help; and (3) physically and emotionally abused the elder by bruising her, "withholding food and water, screaming at her, and threatening her." (*Benun v. Superior Court* (2004) 123 Cal.App.4th 113, 116–117 [20 Cal.Rptr.3d 26] (*Benun*).)

—A skilled nursing facility (1) failed to provide adequate pressure relief to a 76-year-old woman with severe pain in her left leg and identified as at high risk for developing pressure ulcers; (2) dropped the patient; (3) left "her in filthy and unsanitary conditions"; and (4) failed to provide her the proper diet, monitor food intake and assist her with eating. (*Country Villa Claremont Healthcare Center, Inc. v. Superior Court* (2004) 120 Cal.App.4th 426, 430, 434–435 [15 Cal.Rptr.3d 315].)

—A physician "conceal[ed] the existence of a serious bedsore on a nursing home patient under his care, oppose[d] her hospitalization where circumstances indicate[d] it [was] medically necessary, and then abandon[ed] the patient in her dying hour of need." (*Mack v. Soung* (2000) 80 Cal.App.4th 966, 973 [95 Cal.Rptr.2d 830] (*Mack*).)

█. From the statutes and cases discussed above, we distill several factors that must be present for conduct to constitute neglect within the meaning of the Elder Abuse Act and thereby trigger the enhanced remedies available under the Act. The plaintiff must allege (and ultimately prove by clear and convincing evidence) facts establishing that the defendant (1) had responsibility for meeting the basic needs of the elder or dependent adult, such as nutrition, hydration, hygiene or medical care (Welf. & Inst. Code, §§ 15610.07, subd. (b), 15610.57, subd. (b); *Delaney, supra,* 20 Cal.4th at p. 34); (2) knew of conditions that made the elder or dependent adult unable to provide for his or her own basic needs (*Sababin, supra,* 144 Cal.App.4th at pp. 85, 90; *Benun, supra,* 123 Cal.App.4th at p. 116; *Mack, supra,* 80 Cal.App.4th at pp. 972–973); and (3) denied or withheld goods or services

necessary to meet the elder or dependent adult's basic needs, either with knowledge that injury was substantially certain to befall the elder or dependent adult (if the plaintiff alleges oppression, fraud or malice) or with conscious disregard of the high probability of such injury (if the plaintiff alleges recklessness) (Welf. & Inst. Code, §§ 15610.07, subd. (b), 15610.57, subd. (b), 15657; *Covenant Care, supra*, 32 Cal.4th at pp. 783, 786; *Delaney*, at pp. 31–32). The plaintiff must also allege (and ultimately prove by clear and convincing evidence) that the neglect caused the elder or dependent adult to suffer physical harm, pain or mental suffering. (Welf. & Inst. Code, §§ 15610.07, subds. (a), (b), 15657; *Perlin, supra*, 163 Cal.App.4th at p. 664; *Berkley, supra*, 152 Cal.App.4th at p. 529.) ■ Finally, the facts constituting the neglect and establishing the causal link between the neglect and the injury "must be pleaded with particularity," in accordance with the pleading rules governing statutory claims. (*Covenant Care*, at p. 790.)

### 2. *Application of General Legal Principles to This Case*

■ Applying the foregoing legal principles to this case, we do not find in plaintiffs' pleadings allegations that the Hospital did anything sufficiently egregious to constitute neglect (or any other form of abuse) within the meaning of the Elder Abuse Act. In the portion of the first amended complaint setting forth the facts upon which they base all of their causes of action, plaintiffs mention three admissions of Grant to the Hospital. We shall analyze these general factual allegations pertaining to each hospitalization and other facts alleged in the elder abuse cause of action itself to determine whether the allegations are sufficient to trigger the enhanced remedies available under the Elder Abuse Act. We shall then determine whether the trial court properly sustained the Hospital's demurrer and denied plaintiffs leave to amend.

### a. *Insufficiency of the General Factual Allegations*

■ As to the first hospitalization, plaintiffs allege Grant was admitted for chest pains following recent hip surgery and had no pressure ulcers at that time. Nothing is alleged about the Hospital's denial or withholding of any care or about any injury Grant suffered during this hospitalization. Thus, no violation of the Elder Abuse Act was stated based on this hospitalization. (See Welf. & Inst. Code, § 15610.07, subd. (a) [elder abuse includes neglect "with resulting physical harm or pain or mental suffering"]; *Berkley, supra*, 152 Cal.App.4th at p. 529 [no elder abuse when no allegations of any harmful conduct by defendant or any injury resulting from defendant's conduct].)

During the second hospitalization, plaintiffs allege that Grant was found to be malnourished and to have pneumonia, sepsis, and a pressure ulcer

on his lower back and buttocks, which developed while he was at the Center, and that he developed additional pressure ulcers on his heels, which the Hospital "fraudulently and falsely" documented as "there one day and then disappearing the next." Again, no facts are alleged as to any care or treatment the Hospital denied or withheld from Grant—indeed, the allegations that various conditions were diagnosed and that Grant was able to be discharged eight days after admission suggest the Hospital actually provided adequate treatment. Further, although it is alleged that during this hospitalization Grant suffered additional pressure ulcers on his heels, which were falsely documented, there are no allegations as to how the Hospital or its false documentation caused the ulcers or any other injury to Grant. Thus, no violation of the Elder Abuse Act was stated based on Grant's second hospitalization. (See Welf. & Inst. Code, § 15610.07, subd. (a) [elder abuse includes neglect "with resulting physical harm or pain or mental suffering"]; *Perlin, supra,* 163 Cal.App.4th at p. 664 [to obtain enhanced remedies under Elder Abuse Act, plaintiff must prove causation]; *Berkley, supra,* 152 Cal.App.4th at p. 529 [no elder abuse when no allegations of any injury to elder resulting from defendant's conduct].)

■ As to the third and final hospital admission, plaintiffs allege that Grant died because the Hospital did not administer the antibiotics Grant needed to treat his pneumonia and did not have the proper size endotracheal tube in the crash cart, despite "false records" to the contrary. Plaintiffs also allege, however, that during this hospitalization, "bags containing fluids [were] being injected into [Grant]," and after "personnel treating [Grant] . . . could not locate a common size endo-tracheal tube in the crash cart," they began "a search for an appropriate tube elsewhere in the hospital." These allegations indicate the Hospital did not deny services to or withhold treatment from Grant—on the contrary, the staff actively undertook to provide treatment intended to save his life. Although the failure to infuse the proper antibiotics and the failure to locate the proper size endotracheal tube in time to save Grant's life *might* constitute professional negligence (see, e.g., *Nelson v. State of California* (1982) 139 Cal.App.3d 72, 81 [188 Cal.Rptr. 479] (*Nelson*) [failure of medical practitioner to provide necessary medication or treatment is malpractice]), absent specific factual allegations indicating at least recklessness (i.e., a conscious or deliberate disregard of a high probability of injury), neither failure constitutes abuse or neglect within the meaning of the Elder Abuse Act (see Welf. & Inst. Code, § 15657.2 [elder abuse is distinct from professional negligence of health care provider]; *Covenant Care, supra,* 32 Cal.4th at p. 786 [elder abuse includes "egregious withholding of medical care"]; *Delaney, supra,* 20 Cal.4th at p. 35 [Elder Abuse Act only applies to neglect by health care provider that is at least reckless]; *Sababin, supra,* 144 Cal.App.4th at p. 88 [Elder Abuse Act does not apply to simple or gross negligence by health care provider]).

■ Moreover, with respect to their allegations that the Hospital "fraudulently" documented the infusion of antibiotics and the stocking of the crash cart, plaintiffs did not allege in the first amended complaint, and they do not explain on appeal, how Grant relied to his detriment on such fraudulent documentation. Although neglect that is fraudulent may be sufficient to trigger the enhanced remedies available under the Elder Abuse Act (see Welf. & Inst. Code, § 15657; *Mack, supra*, 80 Cal.App.4th at p. 973 [enhanced remedies available for physician's concealment of medical condition if clear and convincing evidence establishes physician committed concealment with fraud]), without detrimental reliance, there is no fraud (see, e.g., *Service by Medallion, Inc. v. Clorox Co.* (1996) 44 Cal.App.4th 1807, 1818 [52 Cal.Rptr.2d 650] ["Deception without resulting loss is not actionable fraud."]; *Goldrich v. Natural Y Surgical Specialties, Inc.* (1994) 25 Cal.App.4th 772, 783 [31 Cal.Rptr.2d 162] [no fraud claim stated when no allegations explaining how plaintiff relied on misrepresentations]). Similarly, plaintiffs do not explain how Grant possibly could have been harmed by the Hospital's "cover-up" in not testing his blood for the right drugs, when that testing was done "[i]mmediately after his death." Though it is conceivable the "cover-up" and the falsified medical records might have injured *plaintiffs* in their pursuit of this litigation, in this survivors' action for elder abuse, only the injury that *Grant* suffered before death matters. (See Welf. & Inst. Code, § 15657, subd. (b) [authorizing recovery of damages for elder's predeath pain and suffering in survivor action for elder abuse]; *Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1284 [45 Cal.Rptr.3d 222] (*Quiroz*) [survivor seeking remedies under Elder Abuse Act limited to recovery for predeath injury to victim of elder abuse].) Therefore, plaintiffs' failure to allege any specific harm *to Grant* caused by the Hospital's "cover-up" or fraudulent recordkeeping is fatal to their claim for the enhanced remedies available under the Elder Abuse Act. (See Welf. & Inst. Code, § 15610.07, subd. (a) [for conduct to qualify as elder abuse, it must cause elder to suffer physical harm, pain or mental suffering]; *Berkley, supra*, 152 Cal.App.4th at p. 529 [no elder abuse when no allegations of any injury to elder resulting from defendant's conduct].)

b. *Insufficiency of the Allegations in the Elder Abuse Cause of Action*

■ No facts alleged in the separately labeled first cause of action for elder abuse cure the defects in plaintiffs' general factual allegations discussed above. There are no additional facts pertaining to Grant's medical care or treatment at the Hospital; instead, plaintiffs merely reformat their general factual allegations into 11 separate "counts" of conduct purportedly constituting elder abuse and allege that Grant suffered "serious personal injury and emotional distress" as a result of the conduct. The only acts and omissions listed in these "counts" that arguably are sufficiently egregious to constitute

elder abuse—abandoning and isolating Grant in the shower; not drying him after bathing; not providing sufficient fluids for proper hydration; and not treating the pressure ulcers on his lower back and buttocks, resulting in sepsis (see Welf. & Inst. Code, § 15610.07, subd. (a) [abuse includes abandonment and isolation]; *id.*, § 15610.57, subd. (b)(1), (2), (4) [neglect includes failure to assist with hygiene, provide medical care or prevent dehydration])—are attributable exclusively to the Center. Allegations of misconduct directed against one defendant, however, do not state a cause of action against another defendant against whom the allegations of misconduct are not directed. (*Greenberg v. Hollywood Turf Club* (1970) 7 Cal.App.3d 968, 974 [86 Cal.Rptr. 885].) Hence, plaintiffs' allegations of misconduct by the Center that *might* constitute elder abuse cannot form the basis of liability against the Hospital.

With respect to the conduct actually attributed to the Hospital—failure to treat Grant's pressure ulcers, administer prescribed antibiotics or stock the crash cart; false documentation; and purposefully inadequate testing for medications—plaintiffs contend their allegations the Hospital acted "recklessly" or "fraudulently" suffice to cause "the acts to rise to the level of neglect" under the Elder Abuse Act. We disagree. When we review a ruling on a demurrer, we do not assume the truth of contentions or conclusions of fact or law, such as those contained in plaintiffs' pleadings. (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479] (*Moore*); *Quiroz, supra*, 140 Cal.App.4th at pp. 1276–1277.) "Facts, not conclusions, must be pleaded." (*Zumbrun v. University of Southern California* (1972) 25 Cal.App.3d 1, 8 [101 Cal.Rptr. 499].) Further, where, as here, statutory remedies are invoked, the facts "must be pleaded with particularity." (*Covenant Care, supra*, 32 Cal.4th at p. 790.) Accordingly, plaintiffs' "[u]se of such terminology [as fraudulently and recklessly] cannot cure [the] failure to point out exactly how or in what manner the [Hospital has] transgressed." (*Lavine v. Jessup* (1958) 161 Cal.App.2d 59, 69 [326 P.2d 238].)[7]

---

[7] At oral argument, plaintiffs' counsel contended that the Hospital staff failed to carry out orders from a physician regarding treatment of Grant's pressure ulcers and infusion of antibiotics, and that this failure constituted neglect within the meaning of the Elder Abuse Act. We found no such allegations in plaintiffs' first amended complaint, however. In any event, because medical treatment generally cannot be provided without a physician's order (see Bus. & Prof. Code, § 2052, subd. (a) [restricting practice of medicine to licensed physicians]), the mere fact that a physician ordered certain treatment does not establish that the staff's failure to provide the treatment was anything more than professional negligence (see *Nelson, supra*, 139 Cal.App.3d at p. 81 [failure to provide necessary medication or treatment is malpractice]). But again, neglect requires more than negligence. (Welf. & Inst. Code, § 15657.2; *Sababin, supra*, 144 Cal.App.4th at p. 88.) It requires intentional misconduct or recklessness (Welf. & Inst.

c. *Propriety of Sustaining the Demurrer Without Leave to Amend*

Plaintiffs contend the trial court erred in sustaining the Hospital's demurrer to the elder abuse cause of action and denying them leave to amend. We disagree.

 As we explained in part IIB.2.a. to b., *ante*, the allegations of the first amended complaint were insufficient to establish neglect within the meaning of the Elder Abuse Act. Thus, even if we assume the Elder Abuse Act creates a separate cause of action for the survivors of a deceased elder (see fn. 6, *ante*), the trial court correctly sustained the Hospital's demurrer. (Code Civ. Proc., § 430.10, subd. (e) [demurrer proper when complaint does not state facts sufficient to constitute cause of action]; *Berkley, supra*, 152 Cal.App.4th at pp. 529–530 [affirming order sustaining demurrer to elder abuse claim when no allegations of conduct by defendant that injured elder].)

We also conclude the trial court properly denied leave to amend. Plaintiffs have the burden to show how they could further amend their pleadings to cure the defects. (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742 [1 Cal.Rptr.2d 543, 819 P.2d 1].) At the hearing on the Hospital's demurrer, the trial court asked plaintiffs' counsel what facts could be added, and he responded that on the day Grant died, Grant was transferred from the emergency department to a floor where he was not properly monitored and that the death certificate listed a false cause of death. The addition of these facts would not have solved the problem with the elder abuse claim, however. Absent specific facts indicating at least recklessness, any improper monitoring *might* have constituted professional negligence but not elder abuse (see *Delaney, supra*, 20 Cal.4th at p. 35 [elder abuse requires at least recklessness]), and the falsification of the death certificate obviously did not injure Grant, who was already dead (see Welf. & Inst. Code, § 15610.07, subd. (a) [for conduct to qualify as elder abuse, it must cause elder to suffer physical harm, pain or mental suffering]). Since plaintiffs previously had amended their complaint, and the addition of the allegations suggested at the hearing on the demurrer would not have changed the legal effect of their pleadings, the trial court properly denied leave to amend. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556 P.2d 737]; *Berkley, supra*, 152 Cal.App.4th at p. 530.)

---

Code, § 15657; *Delaney, supra*, 20 Cal.4th at pp. 31–32), and no facts (as opposed to conclusions) were alleged in the first amended complaint or offered at oral argument to indicate either.

C. *The Trial Court Properly Sustained the Hospital's Demurrer to the Willful Misconduct Cause of Action Without Leave to Amend*

Plaintiffs contend the trial court erred in sustaining without leave to amend the Hospital's demurrer to the third cause of action for willful misconduct because they "have properly pled all of the essential elements of the independent tort of Willful Misconduct, including specific facts which demonstrate the [Hospital's] deliberate indifference and reckless conduct towards Mr. Grant." We need not address this contention because even if plaintiffs sufficiently stated a cause of action, the trial court correctly sustained the Hospital's demurrer on the basis of the statute of limitations.

A defendant may demur to a complaint on the basis of the statute of limitations when it is clear from the face of the complaint that the action is time-barred. (Code Civ. Proc., § 430.30, subd. (a); *Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42 [105 Cal.Rptr.3d 181, 224 P.3d 920]; *Iverson, Yoakum, Papiano & Hatch v. Berwald* (1999) 76 Cal.App.4th 990, 995 [90 Cal.Rptr.2d 665].) "To determine the statute of limitations which applies to a cause of action it is necessary to identify the nature of the cause of action, i.e., the 'gravamen' of the cause of action." (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 22 [32 Cal.Rptr.2d 244, 876 P.2d 1043].) The nature of the cause of action and the primary right involved, not the form or label of the cause of action or the relief demanded, determine which statute of limitations applies. (*Day v. Greene* (1963) 59 Cal.2d 404, 411 [29 Cal.Rptr. 785, 380 P.2d 385]; *Miller & Lux v. Batz* (1901) 131 Cal. 402, 405 [63 P. 680]; *Bird, Marella, Boxer & Wolpert v. Superior Court* (2003) 106 Cal.App.4th 419, 427 [130 Cal.Rptr.2d 782].) As explained below, although labeled "willful misconduct," plaintiffs' third cause of action is really one for personal injuries to Grant based on the Hospital's alleged professional negligence and is barred by the statute of limitations.

Plaintiffs base their willful misconduct claim on most of the same conduct asserted in their claim for elder abuse, but in the willful misconduct claim they contend the Hospital acted "*willfully*" or "fraudulently" instead of "recklessly" or "fraudulently." (Italics added.) Willful misconduct involves more than a failure to use ordinary care; it " ' " 'involves a more positive intent actually to harm another or to do an act with a positive, active and absolute disregard of its consequences.' " ' " (*Calvillo-Silva v. Home Grocery* (1998) 19 Cal.4th 714, 729 [80 Cal.Rptr.2d 506, 968 P.2d 65].) Although plaintiffs have alleged the Hospital "failed to exercise the degree of care that a reasonable person in a like position would exercise" in treating Grant, they have not alleged that the Hospital intended to harm Grant. Nor have plaintiffs alleged facts, as opposed to conclusions or contentions, that indicate the

Hospital acted "with deliberate indifference and conscious disregard for the health, safety and well-being of [Grant]." We do not accept as true such conclusions or contentions when reviewing a ruling on a demurrer. (*Moore, supra,* 51 Cal.3d at p. 125.) The few facts alleged in the willful misconduct cause of action show that the Hospital actually treated (or at least attempted to treat) Grant during his hospitalizations by diagnosing pneumonia, sepsis, pressure ulcers and malnutrition; by infusing fluids; and by searching for the size of endotracheal tube needed to save his life. Although the Hospital might have been negligent in its treatment of Grant, "[n]o amount of descriptive adjectives[, adverbs] or epithets may turn a negligence action into an action for intentional or wilful misconduct." (*Mahoney v. Corralejo* (1974) 36 Cal.App.3d 966, 973 [112 Cal.Rptr. 61].)

When the third cause of action is stripped of its conclusory assertions of willful misconduct, what remains is a survivors' claim for professional negligence against the Hospital. (See Code Civ. Proc., § 377.20, subd. (a) [cause of action survives death]; *Herrero v. Atkinson* (1964) 227 Cal.App.2d 69, 76 [38 Cal.Rptr. 490] [medical malpractice claim survives death of patient].) Plaintiffs essentially allege that Grant "suffered serious personal injury [and] emotional distress" as a result of the Hospital's failures to treat and document his pressure ulcers properly, to administer antibiotics needed to treat his pneumonia and to stock and document a crash cart properly. In other words, plaintiffs contend "that the [H]ospital did not, within its available staff and facilities, provide [Grant] with medical treatment necessary to assure, within reasonable medical probability, that no deterioration of [his] condition would likely occur." (*Barris v. County of Los Angeles* (1999) 20 Cal.4th 101, 114 [83 Cal.Rptr.2d 145, 972 P.2d 966].) Such allegations state a claim for "injuries 'based on professional negligence,' i.e., medical treatment falling below the professional standard of care." (*Id.* at p. 113; see also *Nelson, supra,* 139 Cal.App.3d at p. 81 [failure of practitioner to provide necessary medication or treatment is medical malpractice].)

■ For such professional negligence claims, "the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first." (Code Civ. Proc., § 340.5.) The statute begins to run when the plaintiff actually knows or suspects, or reasonably should know or suspect, the injury was caused by wrongdoing. (*Gutierrez v. Mofid* (1985) 39 Cal.3d 892, 896–897 [218 Cal.Rptr. 313, 705 P.2d 886]; *Henry v. Clifford* (1995) 32 Cal.App.4th 315, 323 [38 Cal.Rptr.2d 116].) Here, plaintiffs alleged that on the day Grant died (Aug. 18, 2008), his daughter (plaintiff Carter) "suspected that the medications for her father . . . were not being administered . . . , so she requested

testing to prove medications were actually administered."[8] Since plaintiffs actually suspected wrongdoing by the Hospital on that day, they had until August 18, 2009, to sue the Hospital. (Code Civ. Proc., § 340.5; *Henry*, at p. 323.) Plaintiffs did not initiate this action until October 27, 2009, however. Therefore, since the first amended complaint disclosed on its face that the third cause of action was untimely, the trial court properly sustained the Hospital's demurrer without leave to amend. (*David M. v. Beverly Hospital* (2005) 131 Cal.App.4th 1272, 1281–1282 [32 Cal.Rptr.3d 649]; *Henry*, at pp. 318, 322–323.)[9]

## DISPOSITION

The judgment is affirmed.

Huffman, Acting P. J., and Haller, J., concurred.

A petition for a rehearing was denied September 8, 2011, and on August 24, 2011, the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied October 26, 2011, S196687.

---

[8] Additionally, on the first page of their opening brief, plaintiffs state: "Immediately after his death, Mr. Grant's daughter demanded a full drug screen to verify antibiotics were administered in accordance with doctors' orders . . . ."

[9] Plaintiffs do not challenge the trial court's ruling that their fifth cause of action for wrongful death was also barred by the statute of limitations.