Filed 10/31/13  Good v. Schuh Enterprises CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| ALAN R. GOOD as Personal Representative, etc. of DORA G. GOOD, Deceased,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>SCHUH ENTERPRISES, INC.,[1]<br><br>    Defendant and Respondent. | A135454<br><br>(Contra Costa County<br> Super. Ct. No. C-09-00382) |

Alan R. Good (Good), as personal representative of the estate of Dora G. Good,[2] maintained causes of action, among others, for elder abuse, negligence, and breach of fiduciary duty against defendant Schuh Enterprises, Inc., (Schuh), who provided nonmedical companion care to the elderly Dora and her husband Bruce Good, both now deceased.  In this appeal, Good claims the trial court erred in granting summary adjudication in favor of Schuh on the cause of action for elder abuse and on all claims for punitive damages, and also erred in determining, on Good's subsequent motion for judgment, that Schuh was not liable either for negligence or a breach of fiduciary duty.  As discussed below, we conclude these rulings were correct, and affirm the challenged order and judgment.

---

[1] Schuh Enterprises, Inc. is formerly known as Companion Care, Inc., a California Corporation.

[2] Hereinafter "Dora" for ease of reference; no disrespect is intended.

BACKGROUND

Dora and her husband Bruce Good initiated this complaint against Schuh and Kaiser Hospital in February 2009. Good was appointed Dora's personal representative in April 2011, following Dora's death earlier that month. On July 28, 2011, Good filed a third amended complaint against Schuh only, alleging causes of action for breach of fiduciary duty, negligence, and elder abuse (see Welf. & Inst. Code, § 15657), among others.

The salient factual allegations of the complaint were that Dora—after suffering an episode of congestive heart failure in January 2008—had been placed in the Oakland Kaiser Hospice Program, which provided in-home medical and counseling services to several hundred terminally ill patients. At this time, Dora, Bruce, and family members including Good, had arranged with Schuh to provide daily in-home care to Dora and Bruce.[3] Schuh was aware of Dora's diminishing faculties and her need for assistance with virtually all activities of daily living. On February 14, 2008, one of Schuh's employees providing care to Dora—identified as Isabella Meza—allegedly dropped Dora while attempting to help her into bed, with the result that Dora suffered a leg fracture.[4] Over the course of the next five to seven days, Schuh's employees, supervisors and managers "willfully and recklessly" failed to provide proper in-home care, leaving Dora "disoriented, confused and terrified because of the untreated pain she experienced."

In December 2011, Schuh sought summary adjudication on the cause of action for elder abuse and on any claims for punitive damages. Evidence, submitted by Schuh in support of its motion, demonstrated that Schuh communicated with Kaiser about Dora's fall and injuries until Dora was seen at Kaiser on February 19, 2008. Schuh had actively advocated for Dora to have the in-home shower modified so as not to present a safety

---

[3] The contract for in-home care indicated that Schuh would provide assistance with the activities of daily living, transportation, light housekeeping, meal preparation and companionship, as well as "advocating and representing client for medical care and service . . . and acting as a liaison to family and friends" through the care manager.

[4] On appeal, Good concedes this incident occurred on the evening of February 15, 2008.

risk. Family members learned of the fall the day after it occurred and were informed that her medical provider had been contacted. There was no evidence Schuh had provided Dora with inadequate food or drink, or that she was malnourished.

In its tentative ruling, the trial court stated Good had "not presented clear and convincing evidence that [Schuh] acted with oppression, fraud and malice or recklessness [and] no evidence that [Schuh's] conduct surrounding Dora's . . . fall was 'intentional, willful, or conscious wrongdoing of a despicable or injurious nature.' " The court concluded the enhanced remedies for elder abuse, provided under Welfare and Institutions Code section 15657, were thus not available. (Citing *Carter v. Prime Healthcare Paradise Valley LLC* (2011) 198 Cal.App.4th 396, 406 (*Carter*).) The court also concluded that "[t]o prevail on an elder abuse cause of action, [Good] must show culpability greater than mere negligence," but that he had "not presented any evidence of such culpability." The court indicated its intent to grant summary adjudication in favor of Schuh as to the cause of action for elder abuse and any claims for punitive damages. After a hearing on the motion held February 1, 2012, the court affirmed its tentative ruling and entered its formal order granting Schuh's motion for summary adjudication.

On March 16, 2012, Good filed a motion for judgment to recover the out-of-pocket costs incurred by Dora "due to the negligence" of Schuh and its employees. In its opposition to the motion, Schuh characterized the motion as one seeking judgment based on its alleged breach of fiduciary duty and negligence. The parties agreed to submit the remaining causes of action (negligence and breach of fiduciary duty) to the court for final determination, allowing the court to make factual determinations and requesting the court to enter judgment after the hearing (essentially agreeing to a bench trial on the remaining causes of action). After the hearing on the motion was completed, the trial court, in an order filed April 26, 2012, concluded the evidence was insufficient to show that Schuh was either negligent or that it had breached any fiduciary duty to Dora and, accordingly, entered judgment in Schuh's favor, with each side to bear its own costs.

Good appeals the order of February 1, 2012 and the judgment of April 26, 2012.

3

## I. *Order Granting Summary Adjudication for Schuh*

As we have noted, the order granting Schuh's motion for summary adjudication disposed of Good's cause of action for elder abuse and any claims for punitive damages. Good challenges this order, reasoning the trial court misapplied the evidence to the law when it concluded there was no showing of any "culpability greater than mere negligence," as is necessary to recover the enhanced remedies in an elder abuse cause of action. In this regard, Good characterizes the evidence as being "not the subject of great dispute."

It is proper to grant a motion for summary adjudication of issues only if it completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty. (Code Civ. Proc. § 437c, subd. (f)(1).) A defendant moving for summary adjudication has the initial burden of showing that the cause of action lacks merit (because one or more elements cannot be established or there is a complete defense). (Code of Civ. Proc., § 437c, subd. (p)(2).) Once the defendant meets that burden, the burden shifts to the plaintiff to demonstrate that triable issues of material fact exist as to that cause of action or a defense. The plaintiff may not rely upon the mere allegations of its pleadings to show a triable issue of fact, but must set forth the specific facts showing that such triable issue exists as to that cause of action or defense. (*Ibid*.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, italics added.)

Motions for summary adjudication are procedurally identical to motions for summary judgment, and our review of the record is accordingly conducted de novo. (*Dunn v. County of Santa Barbara* (2006) 135 Cal.App.4th 1281, 1290; see *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) That is, we determine independently whether the defendant seeking summary adjudication has conclusively negated a necessary element of the plaintiff's cause of action, or has demonstrated that under no

hypothesis is there a material issue of fact that requires the process of trial, such that the defendant is entitled to adjudication as a matter of law. (See G*uz v. Bechtel National, Inc., supra,* 24 Cal.4th at p. 334.) We draw all reasonable inferences from the evidence in the light most favorable to the opposing party. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 470.)

A plaintiff is entitled to the enhanced remedies in a cause of action for elder abuse, when he or she proves, "by *clear and convincing evidence* that [the] defendant is liable for physical abuse[5] . . . or neglect[6] . . . and that the defendant *has been guilty of recklessness, oppression, fraud, or malice* in the commission of this abuse . . . ." (Welf. & Inst. Code, § 15657, italics added.) Thus, a plaintiff must clearly and convincingly prove more than simple or even gross negligence—the remedies are available only for " ' "acts of egregious abuse" against elder . . . adults.' " (*Carter, supra,* 198 Cal.App.4th 396, 405, citing *Delaney v. Baker* (1999) 20 Cal.4th 23, 35.) The "oppression, fraud, or malice" required by Welfare and Institutions Code section 15657 contemplates intentional, willful, or conscious wrongdoing of a despicable or injurious nature, whereas the "recklessness" specified in that section involves a deliberate disregard of the high degree of probability that an injury will occur, one that rises to the level of a conscious choice of a course of action with knowledge of the serious danger it poses to others. (*Carter, supra,* 198 Cal.App.4th 396, 405.) "Recklessness, unlike negligence, involves more than 'inadvertance, incompetence, unskillfulness, or a failure to take precautions . . . .' " (*Delaney v. Baker, supra,* 20 Cal.4th 23, 31.) A plaintiff, in short, must allege

---

[5] As defined by Welfare and Institutions Code section 15610.63, physical abuse includes several crimes including assault, battery, assault with a deadly weapon or by force likely to create great bodily injury, and various sex crimes, as well as other conduct delineated in the statute, none of which appears to be at issue in the present case.

[6] As defined by Welfare and Institutions Code section 15610.57, neglect includes the failure of any person having the care or custody of an elder . . . adult to exercise that degree of care that a reasonable person in a like position would exercise. (Subd. (a)(1).) It may include failure to assist in the provision of food, clothing, or shelter, failure to provide medical care for physical needs, failure to protect from health and safety hazards, or failure to prevent malnutrition or dehydration. (Subd. (b)(1)-(4).)

conduct " '[e]ssentially equivalent to conduct that would support recovery of punitive damages.' "[7]  (*Carter, supra,* at p. 405, citing *Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771, 789.)

The reviewing court in *Carter* distilled several factors that must be proven by clear and convincing evidence in order to prevail in a cause of action for elder abuse:  (1) that the defendant had responsibility for meeting the basic needs of the elder adult; (2) that the defendant knew of conditions rendering the elder adult unable to provide for his or her own basic needs; (3) that the defendant denied or withheld goods or services necessary to meet those basic needs, *either with knowledge that injury was substantially certain to befall the elder adult* (on allegations of oppression, fraud, or malice) *or with conscious disregard of the high probability of such injury* (on an allegation of recklessness); and (4) that the defendant's neglect caused the elder adult to suffer physical harm, pain, or mental suffering.  (*Carter, supra,* 198 Cal.App.4th 396, 406–407, italics added.)  In this case, the trial court based its ruling granting summary adjudication on the lack of a triable issue of material fact regarding the required level of culpability.  Hence, we focus on the third factor articulated in *Carter.*  That is, we review independently whether appellant met his burden of showing the existence of a triable issue of material fact (bearing in mind the applicable standard of proof would be by clear and convincing evidence at trial), on the issue of whether Schuh acted either with knowledge that injury was substantially certain to befall Dora Good, or with conscious disregard of the high probability such injury would result.

On this point, Good's arguments boil down to an insistence that the evidence established "outrageous" conduct on Schuh's part in that:  Schuh assigned its in-home caregiver Meza to be alone with Dora and her husband Bruce on February 15, 2008, knowing Meza was poorly trained, or retrained, regarding the transfer of elderly clients and had dropped Dora once before in December 2007; Schuh allowed Meza to attempt to transfer Dora from a wheelchair into her bed without other assistance; after Dora's leg

[7] A claim for punitive damages may be recovered "where it is proven by *clear and convincing evidence* that the defendant *has been guilty of oppression, fraud, or malice.*" (Civ. Code, § 3294, subd. (a).)

injury resulting from this unsuccessful transfer, Schuh failed to communicate effectively with Kaiser Hospice in order to secure immediate medical care for her; Schuh management failed to communicate with family members about the injury; Schuh failed to advocate medically for Dora between February 19, when she was initially treated at the Kaiser emergency room and returned home, and February 25, when an out-of state family member contacted Dora's primary care physician, Dr. Lisa Woll, who arranged for Dora to be seen and subsequently treated again at Kaiser's orthopedic clinic.

Our review of the evidence reveals the following undisputed facts. The Goods had arranged for Schuh to provide two in-home caregivers for Dora and Bruce after Dora was assigned to the Kaiser Hospice Program. Due to a scheduling conflict, however, only one caregiver, Meza, was present during the relevant time period on February 15, 2008. On that date, Meza lost her balance while trying to transfer Dora from her wheelchair to her bed; Meza fell back onto a table, still holding Dora (Dora did not fall to the ground). Dora did not complain of any pain at the time. The next day (February 16, 2008), Dora complained of pain in her left foot. Kaiser Hospice communicated three times with a Schuh caretaker regarding Dora on that date, beginning in the morning with a caretaker reporting that Dora had fallen and was complaining increasingly of pain in her left leg.[8] Schuh's caregivers additionally contacted Kaiser Hospice on February 18 and 19, with reports of Dora's continuing leg pain, and on the latter date Dora was taken by ambulance

---

[8] According to the deposition testimony of Kaiser nurse Herminia Cruz, Kaiser Hospice first received a call from a Schuh caretaker for Dora at 9:10 a.m.; that call lasted 10 minutes. Kaiser Hospice next received a call from a Schuh caretaker for Dora (Herman) at 2:39 p.m., regarding Dora's complaint of left leg pain below the left knee. The caretaker explained that there had been a fall involving Dora, and that her family was concerned about her complaint of leg pain. The Hospice nurse who received the call spoke with a doctor, who prescribed Vicodin. There was no indication that the doctor felt Dora needed to be brought to the hospital; a note indicated that the nurse who visited Dora next time should check her leg. That call ended at 3:15 p.m. At 4:15 p.m., the Hospice nurse contacted caretaker Herman by phone to check on Dora's condition. The caretaker indicated that Dora had been given the prescribed Vicodin and was sleeping.

to Kaiser for emergency treatment.[9]  At this time, an X-ray showed Dora had a minimally displaced fracture (which Kaiser did not cast until February 25).

Schuh management did not hear about the incident until February 19, 2008, since February 16-18 had been a holiday weekend.  Alan Good and his sister were informed of the incident on February 16.  The sister, Trudy Washburn, visited Dora that day.  Good's out-of-state brother, Brian, learned of the incident the following day.

Dora's primary care physician, Dr. Woll, learned of the incident on February 25, 2008, and arranged for Dora to be taken to Kaiser to be examined by an orthopedic specialist the following day.  At that examination, Dora's fracture was cast.

The foregoing evidence is essentially undisputed.  Viewing it in the light most favorable to Good, as the opposing party, we nevertheless see no evidence creating a triable issue of fact regarding " ' "acts of egregious abuse' " . . ." on Schuh's part. (*Carter, supra,* 198 Cal.App.4th 396, 405.)  More specifically, the evidence does not show conduct creating a triable issue of fact as to whether Schuh's conduct was either intentional, willful, or conscious wrongdoing of a despicable or injurious nature, or involved a deliberate disregard of a high degree of probability that an injury would occur. (*Ibid.*)  We are not persuaded that the trial court misapplied the evidence to applicable law, as claimed by appellant.  Appellant failed to meet his burden of showing the existence of a triable issue of material fact regarding the elder abuse claim. We therefore conclude the trial court correctly determined Schuh was entitled to summary adjudication as a matter of law, both as to the cause of action for elder abuse and any claims for punitive damages.

## II. *Order Entering Judgment in Schuh's Favor*

The trial court, as we have observed, subsequently granted judgment in Schuh's favor based on its finding that the evidence was insufficient to show either that Schuh had been negligent or that it had breached any fiduciary duty with regard to Dora.  Good

---

[9] According to the deposition testimony of Janet Kinney, caregiver Arthur called Kaiser Hospice on February 19, indicating that Dora continued to have moderate leg pain following a previous fall.  Dr. Corrigan ordered that Dora be transported to Kaiser Walnut Creek by ambulance for evaluation of the continuing leg pain.

contends this was error, arguing Schuh breached its duty of care because Dora, Bruce, and other family members had recently arranged for Schuh to provide two in-home caregivers, yet Schuh allowed its in-home caregiver Meza to attempt a transfer of Dora without assistance on February 15, 2008, with the knowledge Meza had dropped Dora during a previous transfer. Good further argues a fiduciary relationship existed between Schuh and Dora in that, under their contract, Dora reposed trust and confidence in Schuh, and Schuh thereby gained control over Dora's affairs. Good seems to suggest, rather than argue, that Schuh breached its duty arising from this purported fiduciary relationship.

We regard Good's motion for judgment below as analogous to a motion for judgment in a nonjury trial. (See Code Civ. Proc., § 631.8.) As such, we review the trial court's finding under the deferential substantial evidence standard and review independently questions of law presented when the decisive facts are undisputed. (*Allegretti & Co. v. County of Imperial* (2006) 138 Cal.App.4th 1261, 1269.) We resolve all conflicts in the evidence in respondent's favor and draw all favorable inferences to support the trial court's determination. (*Estate of Leslie* (1984) 37 Cal.3d 186, 201.)

In connection with the motion for judgment, Schuh presented deposition evidence in which Schuh managers testified that employee training included instruction concerning the transfer of clients. Schuh's in-home caregiver, Meza, testified to her experience as a caregiver to elderly adults since 2004, as well as to training she had received relating to client transfers. Meza said once two caregivers were placed in the home, one would care for Dora and the other for Bruce. Both would conduct a transfer that involved moving Dora from "one place to the other." Meza also stated that on February 15, 2008, she attempted to transfer Dora from her wheelchair to her bed, hugging Dora as she lifted her. Meza, standing up, "lost control" of her balance, "went back," and set Dora on a small table by the bed. At this time, Dora made a comment indicating she "didn't get hurt." We find no evidence presented to show that two caregivers were necessary in this type of transfer, as distinguished from, for example, a transfer from the house to a vehicle.

Appellant also contended that Schuh was negligent in its failure to procure adequate treatment for Dora after the fall on February 15. Kaiser Hospice clinical notes

9

indicated Schuh caregivers were in contact with Kaiser Hospice *three* times on February 16, to report that Dora was increasingly complaining of pain in her foot and leg. Vicodin was prescribed by a Kaiser physician, and was given to Dora by a Schuh caretaker, as detailed above. Contact with Kaiser was again made on February 18. Dora was taken by ambulance to Kaiser on February 19, after her pain persisted and worsened. Another Schuh caregiver contacted Kaiser on February 23 indicating Dora's pain was persisting after her treatment on February 19.

This evidence provides substantial support for the trial court's implicit finding that Schuh, through its caregiver Meza, exercised reasonable care in transferring Dora to her bed on February 15, 2008, and that Schuh afterwards exercised reasonable care in reporting Dora's condition to Kaiser in order to obtain any needed medical care. Substantial evidence, therefore, supports the trial court's conclusion that Schuh was not negligent in its care of Dora Good. Under the deferential substantial evidence standard of review, we do not substitute our judgment for that of the trial court.

Finally, we note Good has cited no authority for the proposition that Schuh's contractual duty to provide nonmedical care for Dora's basic daily needs, and to advocate with Kaiser Hospice for any needed medical care, gave rise to a fiduciary duty. As Good conceded below, a fiduciary relationship is a "recognized legal relationship such as guardian and ward, trustee and beneficiary, principal and agent, or attorney and client . . . ." (*Richelle L. v. Roman Cathoic Archbishop* (2003) 106 Cal.App.4th 257, 271.) We find no such recognized legal relationship in this case. Nor do we perceive this as a situation in which the provider effectively gains control over the elderly adult's affairs (medical or financial), as distinguished from an in-home provider of nonmedical care assisting an adult with his or her daily basic needs, and advocating for the patient's medical care as needed.

We conclude there was no error in granting the motion for judgment in Schuh's favor.

10

**DISPOSITION**

The orders of February 1, 2012, granting summary adjudication in favor of defendant, and April 26, 2012, granting judgment in favor of defendant, are affirmed. Appellant to bear costs on appeal.

_____
Sepulveda, J.*

We concur:

_____
Margulies, Acting P.J.

_____
Banke, J.

* Retired Associate Justice of the Court of Appeal, First Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.