Filed 4/23/14; pub. order 5/20/14 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| GREGORY WORSHAM, | H037749 & H037838 |
| Plaintiff and Appellant, | (Santa Clara County Super. Ct. No. CV197683) |
| v. | |
| O'CONNOR HOSPITAL ET AL., | |
| Defendant and Respondent. | |

Appellant Gregory Worsham[1] has two appeals pending in this court. They both arise from the same case in the Santa Clara County Superior Court. In the underlying case, Worsham alleged negligence and elder abuse against two separate defendants, O'Connor Hospital, Inc. (O'Connor) and Daughters of Charity Health System, Inc. (Daughters of Charity). The court sustained O'Connor's and Daughters of Charity Health System, Inc.'s demurrer to Worsham's elder abuse claim in his second amended complaint without leave to amend. Following this ruling, Worsham dismissed his negligence cause of action, and judgment was entered in favor of O'Connor and Daughters of Charity.

---

[1] The original plaintiff in this case was Juanita Worsham, who passed away on April 6, 2012, after the filing of the notice of appeal. This court permitted her son, Gregory Worsham to substitute in as plaintiff/appellant.

Worsham now appeals the court's ruling sustaining the demurrer to the elder abuse cause of action without leave to amend. Despite filing an appeal as to defendant Daughters of Charity Health System, Inc., Worsham states in his opening brief that he only challenges the trial court's rulings as it pertains to O'Connor. We deem Worsham's statement as a request for dismissal of the appeal as to defendant Daughters of Charity and will dismiss the appeal accordingly.

With regard to defendant O'Connor, Worsham asserts the trial court abused its discretion in sustaining the demurrer to the elder abuse claim without leave to amend.

STATEMENT OF THE FACTS AND CASE

Juanita Worsham entered O'Connor Hospital on July 31, 2010 to undergo hip surgery to treat a fractured hip she suffered as a result of falling in her home. Following surgery, Ms. Worsham was discharged to O'Connor Hospital's "Transitional Care Unit" for rehabilitative care.

On August 20, 2010, Ms. Worsham suffered a fall at the Transitional Care Unit. As a result of the fall, Ms. Worsham broke her right arm and re-broke her hip.

Ms. Worsham filed her original complaint on March 30, 2011, and her first amended complaint on April 18, 2011 alleging violation of the Elder Abuse Act (Wel. & Inst. Code, §§ 15600, et seq.), and professional negligence. The basis of Ms. Worsham's claim was that O'Connor's Transitional Care Unit was understaffed and undertrained, and that the lack of sufficient well-trained staff caused Ms. Worsham's fall.

O'Connor demurred to the first amended complaint and the court sustained the demurrer on the ground that Ms. Worsham failed to plead sufficient facts regarding O'Connor's understaffing and under-training.

Ms. Worsham filed her second amended complaint on July 15, 2011 to which O'Connor also demurred. The hearing for the demurrer was set for September 15, 2011. The court issued a tentative ruling prior to the hearing that stated: "Because we test for

2

liability under the Elder Abuse Act, a statutory cause of action, we apply 'the general rule that statutory causes of action must be pleaded with particularity.' [Citation.] Although [Ms. Worsham] alleges [O'Connor] acted recklessly by deliberately understaffing and undertaining, [Ms. Worsham] has not sufficiently supported the allegations with particular facts." The tentative ruling also stated that the court would sustain the demurrer without leave to amend.

Ms. Worsham did not challenge the tentative ruling, nor did she appear at the hearing on the demurrer on September 15, 2011. The court adopted its tentative ruling, and sustained the demurrer without leave to amend.

Ms. Worsham subsequently filed a motion for reconsideration on September 26, 2011, asserting she had learned new facts through discovery responses she received in August 2011 that could support her elder abuse claim and provide more specificity. The court denied the motion on the ground that Ms. Worsham had the information prior to the hearing on the demurrer, and could have brought the new facts to the court's attention at that time.

Ms. Worsham dismissed the remaining cause of action for negligence, and judgment was entered in favor of O'Connor. Ms. Worsham filed a notice of appeal.

## DISCUSSION

On appeal, Worsham asserts the trial court erred in sustaining O'Connor's demurrer to the elder abuse cause of action without leave to amend.[2]

A demurrer tests the legal sufficiency of the complaint. We review the complaint de novo to determine whether it alleges facts sufficient to state a cause of action. For purposes of review, we accept as true all material facts alleged in the complaint, but not

---

[2] Although the notice of appeal also lists the motion for consideration, Worsham makes no arguments in his appellate briefs regarding the motion, or whether it was incorrectly denied by the trial court.

contentions, deductions or conclusions of fact or law. We also consider matters that may be judicially noticed. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

Elder abuse claims arise under the Elder Abuse Act found in sections 15600 et seq. "The Elder Abuse Act makes certain enhanced remedies available to a plaintiff who proves abuse of an elder, i.e., a 'person residing in this state, 65 years of age or older.' (Welf. & Inst.Code, § 15610.27.) In particular, a plaintiff who proves 'by clear and convincing evidence' both that a defendant is liable for physical abuse, neglect or financial abuse (as these terms are defined in the Act) and that the defendant is guilty of 'recklessness, oppression, fraud, or malice' in the commission of such abuse may recover attorney fees and costs. (*Id.,* § 15657, subd. (a).) On the same proof, a plaintiff who sues as the personal representative or successor in interest of a deceased elder is partially relieved of the limitation on damages imposed by Code of Civil Procedure section 377.34 and may recover damages for the decedent's pre-death pain and suffering. (Welf. & Inst.Code, § 15657, subd. (b).)

"The Elder Abuse Act defines abuse as '[p]hysical abuse, *neglect,* financial abuse, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering' (Welf. & Inst.Code, § 15610.07, subd. (a), italics added); or '[t]he deprivation by a care custodian of goods or services that are necessary to avoid physical harm or mental suffering' (*id.,* § 15610.07, subd. (b)). The Act defines neglect as '[t]he negligent failure of any person having the care or custody of an elder or a dependent adult to exercise that degree of care that a reasonable person in a like position would exercise.' (*Id.,* § 15610.57, subd. (a)(1).) 'Neglect includes, but is not limited to, all of the following: [¶] (1) Failure to assist in personal hygiene, or in the provision of food, clothing, or shelter. [¶] (2) Failure to provide medical care for physical and mental health needs. . . . [¶] (3) Failure to protect from health and safety hazards. [¶] (4) Failure to prevent malnutrition or dehydration.' (*Id.,* § 15610.57, subd. (b).) In short, neglect as

4

a form of abuse under the Elder Abuse Act refers 'to the failure of those responsible for attending to the basic needs and comforts of elderly or dependent adults, regardless of their professional standing, to carry out their custodial obligations." (*Delaney v. Baker* (1999) 20 Cal.4th 23 (*Delaney*).)  Thus, when the medical care of an elder is at issue, "the statutory definition of 'neglect' speaks not of the *undertaking* of medical services, but of the failure to *provide* medical care.'  (*Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771, 783 (*Covenant Care*); see also *id.* at p. 786 ['statutory elder abuse may include the egregious withholding of medical care for physical and mental health needs'].)"  (*Carter v. Prime Health Care Paradise Valley LLC* (2011) 198 Cal.App.4th 396, 404-405 (*Carter*).)

The Elder Abuse Act does *not* apply to simple or gross negligence by health care providers.  (*Delaney, supra,* 20 Cal.4th at p. 28, fn. 2.; *Covenant Care, supra,* 32 Cal.4th at p. 785.)  To obtain the enhanced remedies of section 15657, "a plaintiff must demonstrate by clear and convincing evidence that defendant is guilty of something more than negligence; he or she must show reckless, oppressive, fraudulent, or malicious conduct."  (*Delaney, supra,* 20 Cal.4th at p. 31.)  " 'Recklessness' refers to a subjective state of culpability greater than simple negligence, which has been described as a 'deliberate disregard' of the 'high degree of probability' that an injury will occur [citations].  Recklessness, unlike negligence, involves more than 'inadvertence, incompetence, unskillfulness, or a failure to take precautions' but rather rises to the level of a 'conscious choice of a course of action . . . with knowledge of the serious danger to others involved in it.' [Citation.]"  (*Id.* at pp. 31-32.)

In reviewing the Act's provisions on reckless conduct and professional negligence (§§ 15657 & 15657.2), the *Delaney* court concluded that " 'reckless neglect' under section 15657 is distinct from causes of action 'based on . . . professional negligence' within the meaning of section 15657.2."  (*Delaney, supra,* 20 Cal.4th at p. 31.)  The court

5

held, "a health care provider which engages in the 'reckless neglect' of an elder adult within the meaning of section 15657 will be subject to section 15657's heightened remedies." (*Id.* at p. 27.)

The present case is similar to *Carter, supra*, 198 Cal.App.4th 396 in which the plaintiff alleged elder abuse against a hospital that admitted and treated him for pneumonia and other conditions that developed while he was receiving care at a skilled nursing facility. In *Carter*, the elder was hospitalized three times. As to two of the hospitalizations, there were either no allegations of harmful conduct or no allegations of causation. (*Id.* at pp. 407-408.) On the third occasion, the plaintiff alleged the elder died because the hospital did not administer the antibiotics he needed to treat his pneumonia, and did not have the proper size endotracheal tube in a crash cart, despite " 'false records' " to the contrary. (*Id.* at p. 408.) The court said: "These allegations indicate the Hospital did not deny services to or withhold treatment from [the elder]—on the contrary, the staff actively undertook to provide treatment intended to save his life. Although the failure to infuse the proper antibiotics and the failure to locate the proper size endotracheal tube in time to save [the elder's] life *might* constitute professional negligence [citation] absent specific factual allegations indicating at least recklessness (i.e., a conscious or deliberate disregard of the high probability of injury), neither failure constitutes abuse or neglect within the meaning of the Elder Abuse Act." (*Id*. at p. 408.)

Like *Carter*, the allegations in the present case concern O'Connor's alleged negligent undertaking of medical services, rather than a failure of those responsible for attending to Ms. Worsham's basic needs and comforts to carry out their custodial or caregiving obligations. According to the second amended complaint, O'Connor was required to maintain specific staff-to-patient ratios to address the needs of patients and to ensure compliance with state and federal law. O'Connor was chronically understaffed, and did not adequately train the staff it did have. The allegations include the fact that

O'Connor was aware that Ms. Worsham had a risk of falling, and failed to have the proper staffing in place to prevent Ms. Worsham's fall. As a result of O'Connor's insufficient staffing, Ms. Worsham suffered a fall that resulted in a broken arm and a re-break of her right hip.

The allegations in the second amended complaint are not sufficient to render O'Connor's conduct in failing to provide adequate staffing anything more than professional negligence. The allegations, if true, demonstrate O'Connor's negligence in the undertaking of medical services, not a "fundamental '[f]ailure to *provide* medical care for physical and mental health needs.' " (*Delaney, supra,* 20 Cal.4th at p. 34.)

The trial court correctly sustained O'Connor's demurrer to the second amended complaint without leave to amend. As the plaintiff, Worsham has the burden to show how he could further amend his pleadings to cure the defects. (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742.) Here, Worsham did not demonstrate what specific facts it could add to cure the defects in the elder abuse claim in its opposition to the demurrer. According to Worsham, he learned of additional facts following the receipt of discovery responses in August 2011, after the second amended complaint was filed in July. However, Worsham did not challenge the tentative ruling wherein the court stated its intent to sustain the demurrer without leave to amend because the second amended complaint lacked specific facts. Nor did Worsham file a motion to amend the complaint demonstrating the facts it had and intended to use in an amended complaint. Rather, Worsham filed a motion for reconsideration *after* the court adopted its tentative ruling.

Moreover, Worsham cannot demonstrate that the addition of the facts learned after filing the second amended complaint would have solved the problem with the elder abuse claim. Worsham argues O'Connor should have provided a "sitter" to ensure Ms. Worsham did not fall, and that Ms. Worsham's doctor recommended that a sitter be provided. However, this allegation, like that of understaffing and under-training,

7

amounts to professional negligence.  Absent specific facts indicating at least recklessness, any failure to provide adequate supervision would constitute professional negligence but not elder abuse (see *Delaney, supra,* 20 Cal.4th at p. 35 [elder abuse requires at least recklessness]).

## DISPOSITION

The judgment is affirmed.


_____

RUSHING, P.J.


WE CONCUR:


_____

PREMO, J.


_____

ELIA, J.

Filed 5/20/14

**CERITIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| GREGORY WORSHAM,<br><br>      Plaintiff and Appellant,<br><br>            v.<br><br>O'CONNOR HOSPITAL et al.,<br><br>      Defendant and Respondent. | H037749 & H037838<br>(Santa Clara County<br> Super. Ct. No. CV197683) |

THE COURT:

The opinion in the above-entitled matter filed on April 23, 2014, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports, and it is so ordered. Pursuant to California Rules of Court, rule 8.1105(b) and (c), this opinion is certified for publication.


                                        _____
                                                RUSHING, P.J.



_____
PREMO, J.



_____
ELIA, J.

Trial Court:

Superior Court No.: CV197683


Trial Judge:

The Honorable
Peter H. Kirwan


Attorneys for Plaintiff and Appellant
Gregory Worsham:

Garcia, Artigliere & Schadrack
Stephen M. Garcia
David Medby


Attorneys for Defendants and Respondents
O'Connor Hospital et al.:

Sheuerman, Martini & Tabari
Cyrus A. Tabari


***Worsham v. O'Connor Hospital et al.***
**H037749 & H03783**