Filed 12/9/21  Newman v. Manor Care of Sunnyvale CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WALTER S. NEWMAN, JR., | |
| Plaintiff and Appellant, | G060376 |
| v. | (Super. Ct. No. 18CV330047) |
| MANOR CARE OF SUNNYVALE, CA, LLC, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Santa Clara County, Mark H. Pierce, Judge.  Reversed and remanded with directions.

The Brandi Law Firm, Thomas J. Brandi and Terence D. Edwards for Plaintiff and Appellant.

Petrullo, John Patrick Petrullo and Ronald F. Gari for Defendant and Respondent.

\*        \*        \*

Plaintiff Walter S. Newman, Jr., filed suit against defendant Manor Care of Sunnyvale, CA, LLC, after falling and sustaining life changing injuries while a patient at a skilled nursing facility owned by defendant. Defendant successfully demurred to the complaint three times. On the third occasion, the trial court concluded plaintiff failed to state a claim as to all causes of action—negligence, elder abuse (Welf. & Inst. Code, § 15657) and violation of the "Patients' Bill of Rights" (Health & Saf. Code, § 1430, subd. (b))—and leave to amend was not justified.

Plaintiff appeals from the ensuing judgment entered in defendant's favor. He contends the second amended complaint's allegations were sufficient to meet the pleading requirements for each of the three causes of action and the trial court erred in concluding otherwise. We agree with respect to the negligence and Patients' Bill of Rights causes of action but disagree regarding the claim of elder abuse. Accordingly, we reverse the judgment and remand the matter with directions to the trial court to vacate the judgment and the order sustaining the demurrer to the entire complaint, and enter a new order sustaining the demurrer as to the second cause of action only.

FACTS

At the time of the alleged events giving rise to this action, plaintiff was 65 years old and recovering from surgery and other related health issues. Because plaintiff appeals from the sustaining of a demurrer without leave to amend, the following facts are as alleged in the operative complaint. (See *Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1120 (*Prakashpalan*) [in reviewing sustaining of demurrer, court must assume truth of complaint's allegations].)

Plaintiff was admitted to a skilled nursing facility owned, controlled, and managed by defendant. He had been diagnosed with, inter alia, anemia, difficulty walking, malaise, diabetes requiring insulin and major depressive disorder. Given his condition, he was taking several medications.

2

Upon plaintiff's admission, he was evaluated by multiple people, including his own physician and defendant's employees or agents. They all deemed plaintiff a "fall risk," with a physical therapy evaluation and treatment plan citing the cause as plaintiff's "'documented physical impairments and associated functional deficits.'"

Multiple documents dated within one week thereafter reiterated the risk of plaintiff falling and indicated he required the assistance of one to two people to move. This included a Medicare related assessment, used for obtaining Medicare reimbursements, which stated plaintiff needed such assistance for all of the following activities: "bed mobility (movement while in bed), transfer (to and from bed, chair, wheelchair, and standing position), walking in the room, walking in the corridor, locomotion on unit, locomotion off unit, dressing, toilet use, and personal hygiene."

Another Medicare related assessment dated approximately one week later restated plaintiff's need for assistance with weight bearing support while moving. It also stated he was not steady, had difficulty walking and was unable to stabilize himself without staff assistance.

In the early morning on the day plaintiff was injured, he fell while unattended in his room. Thereafter, a nurse developed a care plan which specified the goal was to ensure plaintiff "'[would] not have another fall incident.'" The same nurse's notes stated: "Safety is maintained. Fall precautions maintained. Will cont[inue] to monitor. AM nurse endorsed."

Less than eight hours after the first fall, plaintiff fell again while unattended in his room. A facility staff member outside the room heard a loud thud and entered the room, discovering plaintiff "face down on the ground with his walker underneath him bleeding from his nose." The resulting injuries left plaintiff a permanent quadriplegic.

Just prior to his second fall, plaintiff walked around his unit unassisted and with a walker for about 10 minutes. He greeted staff along the way and was in their full view. No one told him he required assistance to walk. And, although he had previously

3

walked unassisted around the unit on several other occasions, at no other point in time prior to the injurious fall did anyone tell plaintiff he was at risk for a fall and injury or that he was not permitted to walk or otherwise move without assistance.

Plaintiff filed suit against defendant alleging negligence, elder abuse, and violation of his rights as a patient. Defendant successfully demurred to the original complaint and a first amended complaint based on plaintiff's failure to state a cause of action, with the trial court granting plaintiff leave to amend on both occasions.

After plaintiff filed a second amended complaint, defendant demurred once again contending each of plaintiff's claims failed to state a cause of action. Plaintiff filed an opposition, but the trial court ultimately agreed with defendant. It also denied plaintiff leave to amend because it concluded plaintiff's failure to state a claim after he was given two opportunities to do so demonstrated he would be unable to amend his claims to state sufficient facts.

The trial court entered judgment and plaintiff timely appealed.


DISCUSSION

Plaintiff asserts the granting of defendant's demurrer to the second amended complaint was error because he pled sufficient facts to state a claim concerning each of his causes of action. He does not challenge the court's denial of another opportunity to amend the complaint. We agree with plaintiff as to two of his three causes of action.

*Standard of Review*

"'[T]he function of a demurrer is to test the sufficiency of a pleading as a matter of law, [and] we apply the de novo standard of review in an appeal following the sustaining of a demurrer without leave to amend.'" (*Prakashpalan, supra*, 223 Cal.App.4th at p. 1120.) In evaluating whether a demurrer was properly sustained, we

4

"'independently ""'determine whether the [operative] complaint states facts sufficient to constitute a cause of action.'""'"" (*Shaeffer v. Califia Farms*, *LLC* (2020) 44 Cal.App.5th 1125, 1134 (*Shaeffer*).) "'We assume the truth of the allegations in the complaint, but do not assume the truth of contentions, deductions, or conclusions of law.' The trial court errs in sustaining a demurrer 'if the plaintiff has stated a cause of action under any possible legal theory." (*Prakashpalan*, at p. 1120.)

"To properly state a cause of action . . . the operative complaint must sufficiently allege (1) '"every element of [that] cause of action"' and (2) the plaintiff's standing to sue." (*Shaeffer, supra*, 44 Cal.App.5th at p. 1134.) It "must contain a 'statement of the facts constituting the cause of action, in ordinary and concise language.' [Citation.] The facts to be pleaded are those upon which liability depends—facts constituting the cause of action, or 'ultimate facts.' [Citation.] Such facts must be plausible." (*Prakashpalan, supra*, 223 Cal.App.4th at p. 1120, fn. omitted.) While it "'is sufficient if [the complaint] alleges ultimate rather than evidentiary facts,' . . . the plaintiff must set forth the essential facts of his or her case '""'with reasonable precision and with particularity sufficient to acquaint [the] defendant with the nature, source and extent'""' of the plaintiff's claim. Legal conclusions are insufficient." (*Ibid.*)

*Negligence*

The elements of a negligence cause of action are the existence of a legal duty of care, breach of that duty of care, causation and damages. (*Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 614.) Defendant's demurrer appeared to argue plaintiff's negligence allegations were lacking as to the element of causation. Specifically, it claimed the allegations failed to state "*what* the defendants did or did not do that supposedly *caused* the fall." It maintains the same argument on appeal.

"'"Ordinarily, proximate cause is a question of fact which cannot be decided as a matter of law from the allegations of a complaint. . . . Nevertheless, where

5

the facts are such that the only reasonable conclusion is an absence of causation, the question is one of law, not of fact."'" (*Modisette v. Apple Inc.* (2018) 30 Cal.App.5th 136, 152 (*Modisette*).)

"'[P]roximate cause has two aspects. '"One is cause in fact. An act is a cause in fact if it is a necessary antecedent of an event.'" . . . This is sometimes referred to as "but-for" causation.' [Citation.] To establish but-for causation, the plaintiff must ""'introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of [plaintiff's harm].'"'" (*Modisette, supra*, 30 Cal.App.5th at p. 153.) "'[T]he second aspect of proximate cause "focuses on public policy considerations. . . . '[P]roximate cause "is ordinarily concerned, not with the fact of causation, but with the various considerations of policy that limit an actor's responsibility for the consequences of his conduct."'" [Citations.] [¶] "'As a matter of practical necessity, legal responsibility must be limited to those causes which are so close to the result, or of such significance as causes, that the law is justified in making the defendant pay."'" (*Id*. at pp. 153-154.)

Defendant did not make any policy related arguments below, nor do they do so on appeal, so our focus is on the but-for aspect of causation.

Here, the complaint spells out exactly what plaintiff claims defendant did and did not do. It alleges: (1) defendant knew, and documented numerous times, plaintiff was a fall risk and needed physical assistance to move; (2) defendant never informed plaintiff "he was to have staff assistance [while] walk[ing] nor that without assistance he was at risk for fall and injury"; (3) earlier in the morning on the day plaintiff was injured, he fell while unattended in his room; (4) in response to that initial fall, a nurse developed a care plan with a stated goal of "[r]esident will not have another fall incident"; (5) before falling the second time, plaintiff "had been walking with a walker unassisted on his unit for about 10 minutes" in full view of staff, but "[a]t no time[] was he told he could not walk unattended"; and (6) he had walked unassisted on

6

his unit on several other prior occasions without anyone telling him he needed assistance to do so.

Based on those facts, the complaint further alleged defendant "failed to take reasonable precautions or provide reasonable care," "failed to . . . provide fall precautions," and failed to hire enough competent employees, and provide them with adequate training, to properly care for the number of patients at the facility.

And the alleged causal link to plaintiff's injuries is sufficiently clear. Defendant's alleged failure to provide fall precautions, to have enough adequately trained and competent employees, to follow the recommended care plans and to inform plaintiff he needed help with any movement, despite its knowledge of plaintiff's conditions and circumstances, was a necessary antecedent of plaintiff's injurious fall. (See *Modisette, supra*, 30 Cal.App.5th at p. 153 [but-for causation shown when defendant's alleged conduct is necessary antecedent to claimed injury].) Because "the complaint's factual recitations show plainly the connection between cause and effect," no additional allegations bridging the gap between the two are needed. (*Bockrath v. Aldrich Chemical Co.* (1999) 21 Cal.4th 71, 78; see *Ades v. Brush* (1944) 66 Cal.App.2d 436, 444 ["'The requirement to specifically plead facts in a complaint is to apprise the defendant of the circumstances upon which plaintiff relies and to prevent defendant from being taken by surprise'"].)

The trial court erred in sustaining the demurrer as to plaintiff's negligence cause of action.

*Elder Abuse*

"The Elder Abuse and Dependent Adult Civil Protection Act [citation] affords certain protections to elders and dependent adults. Section 15657 of the Welfare and Institutions Code provides heightened remedies to a plaintiff who can prove 'by clear and convincing evidence that a defendant is liable for physical abuse as defined in

7

[Welfare and Institutions Code] Section 15610.63, or neglect as defined in [Welfare and Institutions Code] Section 15610.57,' and who can demonstrate that the defendant acted with 'recklessness, oppression, fraud, or malice in the commission of this abuse.'" (*Winn v. Pioneer Medical Group, Inc.* (2016) 63 Cal.4th 148, 152.)

Here, there are no allegations of physical abuse, fraud or malice; plaintiff relies on a theory of reckless neglect. Defendant's demurrer contended the complaint's allegations were deficient with respect to the element of recklessness. On appeal, defendant also contends there are insufficient factual allegations concerning neglect. As a general rule a party is not permitted to change its position on appeal and raise new issues not presented in the trial court. (*B & P Development Corp. v. City of Saratoga* (1986) 185 Cal.App.3d 949, 959.) An exception to that general rule is an appeal from the sustaining of a demurrer without leave to amend. In such circumstances, we may consider new theories asserted to challenge or justify the ruling. (*Ibid.*)

Neglect is statutorily defined to encompass "[t]he negligent failure of any person having the care or custody of an elder . . . to exercise that degree of care that a reasonable person in a like position would exercise." (Welf. & Inst. Code, § 15610.57, subd. (a)(1).) A nonexhaustive list of examples of neglect include, among others: (1) "[f]ailure to provide medical care for physical and mental health needs"; and (2) "[f]ailure to protect from health and safety hazards." (*Id.*, subds. (b)(2) & (3).) As courts have explained, "'"[N]eglect' speaks not of the *undertaking* of medical services, but of the failure to *provide* medical care."'" (*Worsham v. O'Connor Hospital* (2014) 226 Cal.App.4th 331, 336 (*Worsham*).)

Allegations concerning neglect are not where the complaint fails. As detailed above, plaintiff alleged defendant did not provide fall precautions despite knowing he was a serious fall risk. This included not telling plaintiff himself that he required assistance to engage in any movement. Further, it is alleged defendant did not employ enough adequately trained staff to service all patients at the facility and did not

8

follow the care plans created for plaintiff. At the pleading stage, these ultimate facts are sufficient to allege neglect.

But the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.) goes beyond simple neglect and simple or gross negligence. "To obtain the enhanced remedies of [Welfare and Institutions Code] section 15657, 'a plaintiff . . . must show reckless, oppressive, fraudulent, or malicious conduct.' [Citation.] '"Recklessness" refers to a subjective state of culpability greater than simple negligence, which has been described as a "deliberate disregard" of the "high degree of probability" that an injury will occur [citations]. Recklessness, unlike negligence, involves more than "inadvertence, incompetence, unskillfulness, or a failure to take precautions" but rather rises to the level of a "conscious choice of a course of action . . . with knowledge of the serious danger to others involved in it."'" (*Worsham, supra*, 226 Cal.App.4th at p. 337.) In other words, the enhanced remedies are available only for "'acts of egregious abuse' against elder and dependent adults [citation] . . . ." (*Delaney v. Baker* (1999) 20 Cal.4th 23, 35.)

Plaintiff cites *Sababin v. Superior Court* (2006) 144 Cal.App.4th 81 (*Sababin*), contending repeated withholding of assistance may demonstrate recklessness. But that case is factually distinguishable. The *Sababin* plaintiff was admitted to a rehabilitation facility and her care plan included the daily monitoring of her skin by facility staff for redness or breakdown. (*Id*. at p. 85.) If skin problems were observed, they were to be reported to a physician for treatment. (*Ibid*.) After a few years in the facility, her condition deteriorated and she was taken to the hospital. She underwent a physical examination which revealed an infected bedsore on her hand, lacerations on her toes and feet, a bruised heel and "dark red and squishy" bedsores on her backside. (*Ibid*; see *id*. at pp. 86, 89.) The rehabilitation facility did not have any documentation of these conditions, and a physician was never notified of the need for treatment. (*Id*. at p. 85.)

9

Some evidence at the summary judgment stage appeared to show the defendant never monitored the plaintiff's skin during the entire time she was at the facility. (*Sababin, supra*, 144 Cal.App.4th at pp. 89-90.) The court concluded it would be up to a jury to decide whether the evidence demonstrated a "significant pattern of withholding . . . care"—i.e., repeated withholding which "leads to the conclusion that the pattern was the result of choice or deliberate indifference." (*Id.* at p. 90.)

Here, there are no allegations of a "significant pattern" (*Sababin, supra*, 144 Cal.App.4th at p. 90), or "conscious and continued pattern" (*Avila v. Southern California Specialty Care, Inc.* (2018) 20 Cal.App.5th 835, 843) of withholding care. The allegations describe two occasions when inadequate fall precautions were taken. Both occurred within hours of each other on the day plaintiff was injured. There are no allegations indicating the purported issue was systemic or reoccurring throughout the weeks plaintiff was at defendant's facility. The same is true for the other alleged actions claimed to constitute neglect.

Further, it is alleged that after plaintiff's first fall, a facility nurse evaluated plaintiff and created a care plan goal of "no more falls." This demonstrates an affirmative attempt to provide care, not a complete withholding of care. While there may have been a lack of follow through with the goal, which may reflect incompetent care, no allegations rise to the level of a deliberate disregard or a conscious choice of a course of action amounting to egregious conduct.

Simply put, "[i]n order to obtain the [Elder Abuse] Act's heightened remedies, a plaintiff must allege conduct essentially equivalent to conduct that would support recovery of punitive damages." (*Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771, 789; see *Carter v. Prime Healthcare Paradise Valley LLC* (2011) 198 Cal.App.4th 396, 405-406 [summarizing elder abuse cases involving conduct sufficiently egregious to warrant enhanced remedies].) Plaintiff did not meet that burden.

10

*Patients' Bill of Rights*

Plaintiff's third cause of action was brought pursuant to Health and Safety Code section 1430. Subdivision (b) of that section "permits a current or former resident or patient of a skilled nursing facility to bring 'a civil action' against the licensee of a facility that 'violates any rights' set forth in the Patients['] Bill of Rights [citation], or 'any other right provided for by federal or state law or regulation.'" (*Nevarrez v. San Marino Skilled Nursing & Wellness Centre, LLC* (2013) 221 Cal.App.4th 102, 130 (*Nevarrez*).) A successful plaintiff may recover up to $500 in statutory damages, as well as costs and attorney fees, and they may obtain an injunction. (Health & Saf. Code, § 1430, subd. (b).)

Defendant argued below, and contends on appeal, the allegations were not pled with sufficient particularity to meet the standard required for a statutory claim. We disagree.

The operative complaint set forth three rights allegedly violated by defendant: (1) "To be fully informed by a physician of his or her total health status and to be afforded the opportunity to participate on an immediate and ongoing basis in the total plan of care including the identification of medical, nursing, and psychosocial needs and the planning of related services" (Cal. Code Regs. tit. 14, § 72527, subd. (a)(3)); (2) "[t]o be treated with consideration, respect and full recognition of dignity and individuality, including privacy in treatment and in care of personal needs" (*id.*, subd. (a)(12)); and (3) to have defendant's facility "employ an adequate number of qualified personnel to carry out all of the functions of the facility (Health & Saf. Code, § 1599.1, subd. (a)).

And it specified defendant's failures. It alleged "[plaintiff] was never informed that his mobility assessments included a requirement that he be physically assisted during transfers and while walking. Plaintiff was not fully advised of the need

11

for fall precautions and complete staff assistance while engaged in movement, and special considerations for his mobility issues and weakened state." Additionally, it stated defendant's "failure to provide needed and promised physical assistance to [plaintiff], [as elsewhere described in the complaint], violated his right to be treated with respect, dignity, and individuality." Lastly, it alleged defendant's "failure to provide physical assistance was because the facility failed to employ an adequate number of qualified personnel to carry out its functions."

Contrary to defendant's assertion, there is no need to elaborate with further detail. A plaintiff pleading a statutory cause of action may not simply parrot the language of the statute. (*Hawkins v. TACA Internat. Airlines, S.A.* (2014) 223 Cal.App.4th 466, 478.) But plaintiff's complaint went beyond that. After including the language of the relevant statutes to identify the rights allegedly violated, it described defendant's specific failures which purportedly violated those rights. In doing so, he satisfied his obligation of "plead[ing] every fact which is essential to the cause of action under the statute." (*Green v. Grimes-Stassforth Stationary Co.* (1940) 39 Cal.App.2d 52, 56.)

Defendant claims the allegations fail to establish a causal connection between the rights allegedly violated and plaintiff's injuries. The argument misses the mark. Unlike a tort cause of action, such as negligence, a cause of action under Health and Safety Code section 1430 does not require proof of injury. (*Nevarrez, supra*, 221 Cal.App.4th at p. 137.) The Legislature authorized a private action against a facility to hold the facility accountable and deter future violations by way of injunctive relief and a specific monetary penalty. (*Jarman v. HRC ManorCare Inc.* (2020) 10 Cal.5th 375, 384-385.) It left it to other statutes to provide avenues for damage recovery due to injury. (See *id.* at pp. 387-388, 390-391 [discussing statute's legislative history and distinct tort law remedies].)

The demurrer should not have been sustained as to plaintiff's third cause of action.

## DISPOSITION

The judgment is reversed.  The matter is remanded with directions to the trial court to vacate the judgment and the order sustaining defendant's demurrer to the entire second amended complaint, and to enter a new order sustaining the demurrer as to the second cause of action only.  Plaintiff is entitled to his costs on appeal.


MARKS, J.*

WE CONCUR:


O'LEARY, P. J.


GOETHALS, J.

*Judge of the Orange Super. Ct., assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.