Filed 12/8/25  Ridinger v. Atria Senior Living CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| GRAHAM RIDINGER, Individually and as Successor in Interest, etc.,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>ATRIA SENIOR LIVING, INC., et al.,<br><br>Defendants and Respondents. | B332921<br><br>(Los Angeles County Super. Ct. No. 20STCV34803) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Christian R. Gullon, Judge.  Reversed

Kowal Law Group, Timothy M. Kowal; Glenn Stern Law and Glenn E. Stern for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Lann G. McIntyre, Corinne C. Bertsche, Kathleen M. Walker and Jeffrey S. Healey for Defendants and Respondents.

_____

Graham Ridinger, individually and as successor in interest to the estate of Nancy Vezina, filed a complaint against Atria Senior Living, Inc., Atria Management Company, LLC, Jen Johnson, Subashsani Kumar, Atria Covina, and WG Covina, SH, LP (collectively Atria or defendants), asserting causes of action for wrongful death, elder abuse, negligence, and intentional infliction of emotional distress (IIED).  Ridinger alleged Johnson and Kumar wrongfully coerced Vezina, who had terminal cancer, to transfer out of their elder care facility, which caused her "transfer trauma," a recognized danger to the infirm elderly, which hastened her death.

Concluding no triable issue supported that transfer trauma rather than cancer caused Veniza's death, the court granted defendants' motion for summary judgment.

We reverse in part.  A triable issue supports that defendants' conduct hastened Vezina's death, but no triable issue supports Ridinger's cause of action for IIED.  Accordingly, we reverse the judgment and direct the court to vacate its order granting summary judgment and enter a new order granting summary adjudication of Ridinger's cause of action for IIED.

## BACKGROUND

### A.    Factual Background

In 2015, Vezina, age 83, moved to Atria Covina, a residential care facility for the elderly (RCFE) operated by Johnson and Kumar.  Her admission records noted numerous medical conditions, including depression.

Upon her admission, Vezina signed a residency agreement stating she may remain at Atria Covina only so long as her care needs were consistent with the level of services the facility offered.  The agreement provided that if Atria Covina staff determined that

2

Vezina's needs exceeded what the facility agreed to provide, Vezina and her responsible representative would arrange for her to move out.

Atria had a written policy which provided that no resident could remain at the facility who suffered from an "unstageable" wound, a pressure sore that is closed with dead tissue, preventing determination of the stage of the wound.

Vezina was assessed for depression multiple times during her stay at Atria Covina, and in 2016 and 2018 was admitted to the hospital several times for depression and suicidal ideation.

In November 2018, Vezina was diagnosed with terminal breast cancer and given six months or less to live. Vitas Healthcare (Vitas), a third party provider, thereafter provided hospice and wound care for Vezina at Atria Covina. In February 2019, Vezina's physician, Dr. James Reilly, described Vezina as "very thin" and frail and reaffirmed his prior estimate that she had six months or less to live.

By mid-April 2019, Vezina had developed an unstageable bedsore. Johnson and Kumar informed Vezina and Ridinger that Atria's policy prohibited a resident with an unstageable wound from remaining at the facility, and Vezina would have to transfer to another facility to receive wound care but could return to Atria Covina once her wound improved. Under protest, Ridinger found another facility for Vezina.

On April 19, 2019, Vezina was transferred to St. Daniel's Home for the Elderly (St. Daniel's), where Vitas continued to provide hospice and wound care.

Vezina cried every day after the transfer, and after seven days refused to eat or drink. With a do-not-resuscitate-order in place, she died on April 30, 2019, 11 days after the transfer.

Vezina's death certificate listed the cause of death as end-stage breast cancer with contributing debility and chronic atrial fibrillation.

## B. Summary Judgment

### 1. *Motion*

Atria moved for summary judgment, or in the alternative summary adjudication, contending no triable issue of material fact supported that (1) its conduct fell below the applicable standards of care, (2) any of its acts or omissions were outrageous, constituted elder abuse, or substantially contributed to Vezina's death, (3) Ridinger suffered severe emotional distress, or (4) Vezina's estate's IIED claim survived her death. In support, Atria submitted Vezina's death certificate, her medical records, the declaration of its expert, Karen Josephson, M.D., and Atria's written policy that Atria Covina would not house a person suffering from an unstageable pressure sore.

Dr. Josephson, who practices geriatric medicine, declared Atria's records showed that Vezina agreed to the transfer to St. Daniel's and planned to return to Atria once her condition and wounds improved. In addition, Vezina, who suffered from terminal breast cancer and was placed on hospice in mid-November 2018 with a life expectancy of 6 months or less, had a history of depression and suicidal ideation prior to her transfer, with multiple hospitalizations for such.

Dr. Josephson declared, "Atria is permitted to determine whether the level of care necessitated by a resident's needs exceeds the care and services Atria can provide regardless of whether a resident is on hospice or not. Here, Ms. Vezina, while receiving hospice care from Vitas, developed a wound to her left buttocks. As her condition continued to decline she developed additional wounds

4

and/or skin breakdown to her buttocks, coccyx and other parts of her body despite receiving care from Vitas. In light of same, it was appropriate and within the standard of care for Atria to determine that Ms. Vezina should be transferred to another facility to receive additional wound care."

Dr. Josephson concluded that to a reasonable degree of medical probability, no act or omission by Atria caused or substantially contributed to Vezina's death.

## 2. *Opposition*

Plaintiff opposed Atria's summary judgment motion, contending Atria's actions hastened Vezina's death.

### a. *Dr. Steinberg Declaration*

In support of the opposition, Karl Steinberg, M.D., an expert in hospice care and palliative medicine, declared: "Atria's actions in forcing Ms. Vezina to relocate directly and proximately caused transfer trauma with severe emotional distress, and substantially contributed to her premature death. . . . Ms. Vezina's oral intake after she was transferred to St. Daniel's RCFE was poor, and she became progressively malnourished and dehydrated. . . . Ms. Vezina's transfer trauma and the associated emotional devastation . . . were a substantial contributing cause of this reduction in oral intake. This accelerated malnutrition and dehydration contributed to her overall progressive decline and death. If she had remained at Atria [Covina], Ms. Vezina's oral intake would not have declined rapidly, and she would not have died on April 30, 2019, but would have survived beyond that date and would have lived out her days in the comfort and dignity of her longtime home, in a familiar environment surrounded by close friends and her treasured possessions."

5

Dr. Steinberg declared it was medically unnecessary to transfer Vezina from Atria Covina to treat her unstageable wound because skin breakdown in the form of pressure ulcers is an often unavoidable clinical development in end-stage medical conditions, even with appropriate care and treatment, and can develop and worsen whether or not the patient is at home, in an elder care facility, or in a hospital. When such pressure ulcers develop in a patient like Vezina, it is improbable they will resolve even with the best possible wound care, and treatment is generally only palliative. There was no reasonable medical basis for invoking a higher level of wound care for Vezina, as the skin breakdown associated with end-stage cancer would not be expected to improve significantly even with very aggressive wound management, and Vitas cared for her wounds at Atria Covina with a medically appropriate treatment plan which met all her needs.

Dr. Steinberg declared that Atria's determination that Vezina required a higher level of care for wound treatment was an erroneous medical decision that Johnson and Kumar, who were not physicians, were unqualified to make. Any decision to transfer should have been based on a medical assessment and a physician's orders. To mitigate the risk of transfer trauma, California's regulations dealing with eviction from an RCFE permit a terminally ill RCFE resident receiving hospice services to remain in the RCFE until her death, as the extreme disruption associated with a sudden, unwanted relocation away from a familiar residence is well known to cause substantial harm to frail, older patients.

Dr. Steinberg declared that Atria knew or should have known about the high probability of transfer trauma to Vezina if she was forced to leave her home of several years. Any professional who works in residential or skilled elder care should be readily familiar with the concept and manifestations of transfer trauma—severe

6

emotional reactions, cognitive deterioration, and even loss of functional independence are common when a frail elder is relocated from a familiar environment with familiar caregivers, peers and personal belongings to a new environment. Atria consciously disregarded the probable consequences of forcing Vezina to move out.

Dr. Steinberg declared that Atria coerced Vezina into moving out of Atria Covina, even though Vitas could have continued to care for her skin breakdown there. Vezina, a vulnerable and terminally ill elder who was susceptible to undue influence, could not intelligently consent to such a transfer. Moreover, Atria misrepresented to Vezina that the transfer would be temporary, and she would return to Atria as soon as her wounds healed. Any reasonably informed professional in elder care would know this would never occur in her case, as she was nearing death and had unhealable wounds. Atria's decision to effectively force Vezina to move out of her home to an unfamiliar facility near the end of her life deprived her of her right to self-determination and caused her to suffer in her last two weeks of life in a new and unfamiliar location where she was miserable, depressed, confused about how she landed there, and guilt-ridden. Vezina was devastated and guilt-ridden over the transfer and would repeatedly ask what she had done to deserve it. She cried frequently every day until a few days before her death.

Atria objected to Dr. Steinberg's statements that (1) if Vezina had remained at Atria Covina her oral intake would not have declined rapidly and she would have survived beyond April 30, 2019; and (2) Atria's actions in forcing Vezina to relocate caused transfer trauma with severe emotional distress and substantially contributed to her premature death. The court sustained the objections.

b.   *McGee, Minnery and Kirkpatrick Declarations*

Terry McGee, the director of St. Daniel's, declared that it was not necessary to transfer Vezina out of Atria Covina because she was already receiving hospice care there and no law or regulation required that she move.  McGee declared that he advised Atria not to transfer Vezina, stating, "If you move her you will kill her." When McGee visited Vezina at St. Daniel's, she cried every day and would ask why she had been removed from her home and what she had done that was so bad.  After being at St. Daniel's for seven days, Vezina refused to eat or drink.  McGee opined that the transfer caused Vezina to no longer want to live.

Cynthia Minnery, a registered nurse expert, opined that a resident with a cancer diagnosis has very little chance of her wounds healing, and Atria directors breached the applicable standard of care by transferring Vezina without consulting her primary care physician.

Meredith Kirkpatrick, a licensed vocational nurse and team manager at Vitas, declared that the Atria director told her that Vezina had a wound that Atria could not treat, and that per Atria policy, she would have to go to a skilled nursing facility. Kirkpatrick told the Atria director that Vitas could continue to care for Vezina's wound at Atria Covina, and there was no reason to transfer her, but Atria staff indicated this would not be acceptable. Kirkpatrick declared that Vezina agreed to go to a skilled nursing facility or hospital only to get better so she could return to Atria Covina.

### 3.   *Ruling*

The court found that no triable issue supported that trauma transfer "rather than" cancer caused Vezina's death.  Concluding

8

that this finding defeated each cause of action, the court declined to analyze the remaining elements of plaintiff's claims. The court granted Atria's motion for summary judgment and entered judgment accordingly.

Plaintiff appeals.

## DISCUSSION

Plaintiff contends the trial court erred in concluding no triable issue of material fact supports any cause of action. We agree in part.

Ridinger does not challenge the court's ruling as to his individual cause of action for IIED, nor contest that Vezina's estate's IIED claim does not survive her death. (See *Berkley v. Dowds* (2007) 152 Cal.App.4th 518, 530 [a claim for IIED does not survive the victim's death].) We therefore affirm the court's ruling insofar as it grants summary adjudication of Ridinger's cause of action for IIED.

### A. Legal Principles

#### 1. *Elements of the Causes of Action*

A cause of action for wrongful death arises on the death of the decedent and is vested in the decedent's heirs. (*Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1263.) Its elements are: (1) a tort (negligence or other wrongful act), (2) the resulting death, and (3) damages, consisting of the pecuniary loss suffered by those persons who, because of their relation to the deceased, are presumed to be injured by his or her death. (*Ibid*.)

The elements of a cause of action for professional negligence are: " '(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal

9

connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence.' " (*Simmons v. West Covina Medical Clinic* (1989) 212 Cal.App.3d 696, 702.)

Elder abuse includes physical abuse, neglect, abandonment, and other mistreatment with resulting physical harm or pain or mental suffering. (Welf. & Inst. Code, § 15610.07.) "[N]eglect" refers to "the 'failure of those responsible for attending to the basic needs and comforts of elderly or dependent adults . . . to carry out their custodial obligations.' " (*Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771, 783.)

The plaintiff must prove by clear and convincing evidence "that the defendant (1) had responsibility for meeting the basic needs of the elder or dependent adult, such as nutrition, hydration, hygiene or medical care [citations]; (2) knew of conditions that made the elder or dependent adult unable to provide for his or her own basic needs [citations]; and (3) denied or withheld goods or services necessary to meet the elder or dependent adult's basic needs, either with knowledge that injury was substantially certain to befall the elder or dependent adult (if the plaintiff alleges oppression, fraud or malice) or with conscious disregard of the high probability of such injury (if the plaintiff alleges recklessness)." (*Carter v. Prime Healthcare Paradise Valley LLC* (2011) 198 Cal.App.4th 396, 406-407 (*Carter*).)

Examples of conduct sufficiently egregious to warrant the award of enhanced remedies for elder abuse include (1) failing to provide an elderly man suffering from Parkinson's disease with sufficient food and water, leaving him unattended for long periods in his own excrement; (2) frequently leaving an 88-year-old woman with a broken ankle lying in her own urine and feces for extended periods as she developed pressure ulcers; (3) abusing, beating,

10

restraining and denying medical treatment to a 78-year-old man; (4) failing to assist a 90-year-old blind and demented woman with eating and using restraints to punish her and prevent her from obtaining help, and by screaming at and threatening her and withholding food. (*Carter, supra*, 198 Cal.App.4th at pp. 405-406.)

"In order to obtain the remedies available in [Welfare and Institutions Code] section 15657, a plaintiff must demonstrate by clear and convincing evidence that defendant is guilty of something more than negligence; he or she must show reckless, oppressive, fraudulent, or malicious conduct. The latter three categories involve 'intentional,' 'willful,' or 'conscious' wrongdoing of a 'despicable' or 'injurious' nature. (*Delaney v. Baker* (1999) 20 Cal.4th 23, 31; see also Welf. & Inst. Code, § 15657.)

### 2. *Causation*

Ridinger's causes of action require proof that transferring Vezina out of Atria Covina was a substantial factor in causing her transfer trauma, which was a substantial factor in hastening her death. The California Code of Regulations defines "transfer trauma" as "the consequences of the stress and emotional shock caused by an abrupt, involuntary relocation of a resident from one facility to another." (Cal. Code Regs., tit. 22, § 87101, subd. (t)(2).)

The trial court found no triable issue supported that transfer trauma "rather than" cancer caused Vezina's death. But the material issue was whether transfer trauma contributed to Vezina's death *in addition* to cancer.

An injury may result from multiple contributing causes. " 'A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm. [¶] Conduct is not a substantial

11

factor in causing harm if the same harm would have occurred without that conduct.' [Citation.] [¶] If a defendant's negligence was a substantial factor in causing the plaintiff's harm, then the defendant is responsible for the harm. Such defendant cannot avoid responsibility because some other . . . condition or event was also a substantial factor in causing the harm. [Citation.] [¶] For purposes of causation, if 'a defendant's negligence is a concurring cause of an injury, the law regards it as a legal cause of the injury, regardless of the extent to which it contributes to the injury.' " (*Raven H. v. Gamette* (2007) 157 Cal.App.4th 1017, 1025.)

### 3. *Summary Judgment*

A trial court properly grants summary judgment " 'if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' (Code Civ. Proc., § 437c, subd. (c).) A defendant may establish its right to summary judgment by showing that one or more elements of the cause of action cannot be established or that there is a complete defense to the cause of action." (*Neiman v. Leo A. Daly Co.* (2012) 210 Cal.App.4th 962, 967.) "Once the moving defendant has satisfied its burden, the burden shifts to the plaintiff to show that a triable issue of material fact exists as to each cause of action. [Citation.] A triable issue of material fact exists where 'the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.' " (*Ibid.*)

On appeal, we apply an independent standard of review to determine whether a trial is required—whether the evidence favoring and opposing the summary judgment motion would support a reasonable trier of fact's determination in the plaintiff's favor on the cause of action or defense. (*Aguilar v. Atlantic*

12

*Richfield Co.* (2001) 25 Cal.4th 826, 850.) In doing so we view the evidence in the light most favorable to the party opposing summary judgment. (*Id.* at p. 843; *Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 139.) We accept as true the facts shown by the evidence offered in opposition to summary judgment and the reasonable inferences that can be drawn from them. (*Spitzer v. Good Guys, Inc.* (2000) 80 Cal.App.4th 1376, 1385-1386.)

We review a trial court's ruling on evidentiary objections in connection with a motion for summary judgment for abuse of discretion. (*Sanchez v. Kern Emergency Medical Transportation Corp.* (2017) 8 Cal.App.5th 146, 154.) Discretion is abused when the trial " 'court exceeds the bounds of reason, all of the circumstances before it being considered.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.)

## B.    Application

Because the trial court found the issue of causation of Vezina's death to be dispositive across all causes of action, we will discuss it first, then examine whether any triable issue supports the other elements of Ridinger's causes of action.

### 1.    *Causation*

Ridinger presented substantial evidence that transferring Vezina from Atria Covina caused her rapid decline and refusal to eat or drink, resulting in malnourishment and dehydration, which hastened her death.

Terry McGee, the director of St. Daniel's, observed that Vezina became despondent after the transfer, cried every day, and refused to eat or drink.

Dr. Steinberg declared it was well recognized that transferring a frail, elderly person from a familiar place of residence may cause substantial harm. He declared that Atria's

13

actions caused Vezina to refuse to eat or drink, which rendered her malnourished and dehydrated, which led to her premature death. He opined that had Vezina remained at Atria, she would not have declined so rapidly and would have lived beyond April 30, 2019.

This evidence created a triable issue of material fact supporting that Vezina's transfer from Atria Covina hastened her death.

In sustaining objections to Dr. Steinberg's declaration, the trial court misapprehended the thrust of his opinion, concluding it was offered to show that Vezina died *solely* from transfer trauma. On the contrary, it was offered to show that trauma transfer was a concurring cause of her death, along with cancer. The court abused its discretion by cabining Dr. Steinberg's opinion to a nonissue.

Atria argues Dr. Steinberg's opinion was conclusory and speculative, as no evidence suggested Vezina would live beyond April 30, 2019, especially given that Dr. Reilly had opined in November 2018, six months earlier, that she had only six months or less to live. We disagree. Dr. Steinberg could reasonably conclude that a cancer patient who suffers from malnutrition will die sooner than one who does not.

Atria argues Dr. Steinberg's opinion was conclusory and speculative because no evidence established that she suffered from malnutrition or dehydration. We disagree. Dr. Steinberg could reasonably conclude that a thin, frail person who refuses to eat or drink for four days will suffer from malnutrition and dehydration.

Atria argues that Dr. Steinberg's opinion failed to account for the fact that Vezina was dying of a terminal illness and had become progressively weaker before and after the transfer to St. Daniels. Not so. Dr. Steinberg accounted for Vezina's deteriorating condition but concluded that due to Atria's conduct, she weakened faster and died earlier than she otherwise would.

14

Ridinger's evidence, if credited by a fact finder, established that malnourishment and dehydration caused by transfer trauma attributable to Atria's actions were substantial contributory factors in Vezina's death. The evidence thus raised a triable issue supporting causation. We next examine the remaining elements of plaintiff's causes of action.

### 2. *Wrongful Death and Negligence—Standard of Care and Breach*

Dr. Josephson opined that the standard of care applicable to residential care facilities permitted Atria to determine whether it would provide the level of care Vezina needed, and to insist that she transfer out of Atria Covina if she developed an unstageable wound, especially if she consented to the transfer.

This evidence, if credited, established that Atria met the applicable standard of care when it transferred Vezina from Atria Covina, and shifted the burden to Ridinger to present rebutting evidence.

In rebuttal, Ridinger's experts opined that the standard of care applicable to a residential care facility does not permit the facility to make misrepresentations to a resident to obtain her consent to a transfer, nor to effect a transfer that it knows or should know will harm the resident. Atria admitted (and Kirkpatrick, the Vitas manager, declared) that Atria directors told Vezina the transfer to St. Daniel's was temporary, and she could return to Atria Covina once her pressure wound healed. But Minnery, a registered nurse, opined there was very little chance that an unstageable wound such as Vezina's would heal, and Dr. Steinberg opined that any reasonably informed elder care professional would know that Vezina's wound would not heal in the time she had left to live. Dr. Steinberg opined that transfer trauma was a known hazard to the infirm elderly, and McGee, St. Daniel's

15

director, declared that he advised Atria not to transfer Vezina because "[i]f you move her you will kill her." This evidence, if credited, raises a triable issue supporting that the applicable standard of care prohibits a residential care facility from making misrepresentations to a resident to obtain consent to a hazardous transfer, and that Atria breached that standard.

Atria argues that no evidence suggests its directors knew that Vezina's wounds would not heal and that she would not be able to return to Atria Covina. We disagree. Dr. Steinberg opined that any reasonably informed elder care professional would know Vezina's wound would not heal, and McGee declared that he advised Atria's directors that transferring Vezina would result in her death.

Because triable issues support that Atria's transferring Vezina from Atria Covina breached the appliable standard of care and as discussed above, contributed to plaintiff's harm, summary adjudication of plaintiff's causes of action for wrongful death and negligence was improper.

### 3. *Elder Abuse*

Dr. Josephson declared that Atria temporarily transferred Vezina from Atria Covina when her condition had worsened to a point beyond what Atria determined it would manage. Atria argues this evidence establishes that Atria transferred Vezina to promote her health and well-being and thus did not act in a reckless or egregious manner.

We disagree with the premise because Dr. Josephson never declared that Atria transferred Vezina to St. Daniel's to promote her health and well-being; she declared only that it was within the

16

standard of care for Atria to establish a policy regarding the level of care it was willing to provide, and Atria acted within that policy.[1]

In any event, Dr. Josephson declared that Atria's policy mandating transfer was within the applicable standard of care and Vezina agreed to the transfer. This evidence, if credited, showed that Atria did not deny necessary services to Vezina either with knowledge that injury was substantially certain to befall her or with conscious disregard of the high probability of such injury, thus shifting the burden to Ridinger to raise a triable issue supporting his elder abuse cause of action.

In rebuttal, Kirkpatrick, a licensed vocational nurse and team manager at Vitas, declared that she informed Atria that Vitas could continue to care for Vezina's wound at Atria Covina, and there was no reason to transfer her. McGee declared that he advised Atria the transfer would result in Vezina's death. Minnery opined that there was very little chance that Vezina's wounds would heal. Dr. Steinberg opined that any reasonably informed elder care professional would know that Vezina's wound would not heal in the time she had left. This evidence raises a triable issue supporting

---

[1] We acknowledge that Dr. Josephson declared Atria transferred Vezina to another facility to "receive additional wound care," but it is unclear what she meant. If Dr. Josephson meant that Vezina would receive the same wound care on a continuing basis, her opinion fails to establish any health-related reason for the transfer. If she meant that Vezina would receive enhanced wound care, her opinion is unsupported by any explanation about how the care she received at Atria Covina was deficient nor how enhanced care would promote her well-being. Either way, Dr. Josephson's declaration failed to establish that Atria transferred Vezina to another facility to promote her health and well-being.

that Atria, knowing catastrophic harm could follow, unnecessarily transferred Vezina only to satisfy its own policy.

Triable issues thus support that Atria (1) had responsibility for meeting Vezina's basic needs, such as medical care; (2) knew of conditions that made Vezina unable to provide for her own basic needs; and (3) denied services necessary to meet her basic needs, either knowing that injury was substantially certain to befall her (i.e., willfully, egregiously, and with oppression, fraud or malice) or with conscious disregard of the high probability of such injury (i.e., recklessly).

Atria argues Dr. Josephson's declaration showed that Atria determined it could not provide the care Vezina needed. Untrue. The declaration showed that Atria *would* not provide that care nor allow Vitas to provide it at Atria Covina.

## DISPOSITION

The judgment is reversed. The trial court is directed to vacate its order granting Atria's motion for summary judgment and enter a new order granting only its motion for summary adjudication of the cause of action for intentional infliction of emotional distress.

The parties shall bear their own costs on appeal.

<u>NOT TO BE PUBLISHED</u>.

ROTHSCHILD, P. J.

We concur:

BENDIX, J.

WEINGART, J.